CORSICANA COTTON MILLS, INCORPORATED, V. GEORGE H. SHEPPARD, COMPTROLLER, ET AL.

No. 6670. Decided May 2, 1934.
(71 S. W., 2d Series, 247.)

*O. H. Woodrow,* of Sherman, for relator.

The duty of the Comptroller to issue the warrant to relator as directed by the statute is ministerial, nondiscretionary and mandatory, and confers upon him no authority to inquire into the existence or validity of the appropriation. Fulmore v. Lane, Comptroller, 104 Texas, 499, 140 S. W., 405; Lightfoot, Attorney General, v. Lane, Comptroller, 104 Texas, 447, 140 S. W., 89.

The State may, through its Legislature, voluntarily refund the over payment of taxes and in so doing its act is not vio-

lative of either sections 44, 49 or 51 of Article 3 or of section 6 of Article 16 of the Constitution. 10 Tex. Jur. 22; State v. Carter, 30 Wyo., 22, 215 Pac., 477; Byrd v. City of Dallas, 118, Texas, 28, 6 S. W. (2d) 738; United States v. Realty Co., 163 U. S., 427, 48 L. Ed., 215; State v. Bradford, 121 Texas, 515, 50 S. W. (2d), 1065.

*James V. Allred*, Attorney General, *Sidney Benbow*, Assistant Attorney General, for respondents.

The act of the Legislature, in so far as the same applies to the claim upon which relator bases this suit is unconstitutional and void because, under the facts, no legal liability exists on the part of the State of Texas to return to relator the taxes voluntarily paid by it, for the reason that the Legislature is specifically prohibited, under section 44, Article 3, Constitution of Texas, to appropriate any money out of the public treasury to pay the same. City of Houston v. Feeser, 76 Texas, 365; Galveston City Co. v. Galveston, 56 Texas, 486; Gaar, Scott & Co. v. Shannon, 115 S. W., 361; 223 U. S., 468; State v. Wilson, 71 Texas, 291, 9 S. W., 155; State v. Haldeman, 163 S. W., 1020; Terrell v. Middleton, 187 S. W., 367.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding instituted in the Supreme Court by Corsicana Cotton Mills, Inc., a Texas corporation, against George H. Sheppard, State Comptroller, and Charley Lockhart, State Treasurer, to compel the issuance and payment of a state warrant for $3,385.00.

As shown by the record relator is a corporation, duly incorporated under the laws of this State, and has been such during, and since the times here involved.

It further appears from the record that relator erroneously paid franchise taxes to the State of Texas for the years 1920 to 1927, both inclusive, in the total sum of $3,384.50, as follows:

| | |
|---|---|
| 1920 | $235.50 |
| 1921 | 365.00 |
| 1922 | 452.50 |
| 1923 | 465.75 |
| 1924 | 462.75 |
| 1925 | 475.75 |
| 1926 | 433.50 |
| 1927 | 493.75 |
| Total | $3384.50 |

Relator presented a claim to the Claim Committee of the 43rd Legislature for the above sum of $3,384.50. The Committee seems to have approved the claim for $3,385.00, and included same for that amount in H. B. 919, ch. 237, p. 830, Acts Reg. Ses. 43rd Leg. 1933, known as the Miscellaneous Claims Bill. This bill duly passed both houses of the Legislature, and is now in effect so far as it is valid.

It is alleged by relator, and taken as true, that after the above act became effective it made demand on the Comptroller for the issuance of a warrant for the sum of $3,385.00, which demand was refused. This proceeding followed.

At this point we wish to say that the respondent, Lockhart, has never been called on to perform, or refuse to perform, any official act. There is therefore no legal reason for making him a party to this proceeding.

It appears from the undisputed record that relator, acting through its duly authorized officers and agents, through an erroneous construction of law, paid franchise taxes to the Secretary of State which were duly placed in the State Treasury to the credit of the General Revenue Fund, upon that portion of its capital set-up employed without the State as well as within the State for the years 1920 to 1927, inclusive. In this connection it appears that the total taxes paid on the capital set-up employed without the State for such years was $3,384.50. This amount the relator was not required to pay under the provisions of Article 7084, R. C. S., because the law as it then existed specifically provided that a domestic corporation was not required to pay franchise taxes upon that portion of its capital set-up employed without this State. In this connection we here quote the following from Article 7048, as it existed at the time these taxes were paid:

" * * * Where a domestic corporation does business outside the State the franchise tax of such corporation shall be computed upon that proportion of the authorized capital stock plus the surplus and undivided profits, if any, of such corporation, as the total gross receipts of such corporation, from its business done in Texas bears to the total gross receipts of the corporation from all sources."

As we understatnd this record the Secretary of State never at any time made any demand on relator to pay franchise taxes for the years involved in this claim on its capital set-up employed outside this State. Furthermore, in our opinion this record contains no evidence that can reasonably be interpreted as showing,or tending to show, that the Secretary of State, the

Attorney General, or any other State authority, ever made any ruling or demand that would have justified relator in paying the taxes here involved on its capital set-up employed outside the State. In this connection the record shows that none of the reports filed by the relator with the Secretary of State made any affirmative showing that any of relator's capital set-up was employed without the State. In other words the reports filed by the relator with the Secretary of State gave him no information by which he could have known that any over-payment of franchise taxes was being made. It is not contended that at the time this appropriation was made there existed any statutory law authorizing the refund of these taxes.

Under the above record the Attorney General, on behalf of respondents, contends that this appropriation is unconstitutional and void because in violation of Section 44 of Article 3 of our State Constitution. We sustain this contention.

In Cause No. 6607, Austin National Bank v. George H. Sheppard, Comptroller, and Charley Lockhart, State Treasurer, (ante, p..272) we have fully discussed, interpreted and construed the above constitutional provision. In that opinion we hold "a person who voluntarily pays an illegal tax has no claim for its repayment." (See authorities cited in No. 6607, supra). Under the facts detailed above this corporation was a volunteer in paying the taxes here involved. It therefore had no legal claim against the State for their repayment at the time this appropriation was made. Since the appropriation, at the time it was made, was not supported by legal claim it was and is unconstitutional and void. At this point we again refer to our opinion in Cause No. 6607, supra, which is delivered with this opinion.

Relator contends that these taxes were not voluntarily paid because the blanks furnished by the Secretary of State on which the reports for the years involved were made contained certain notations.

The blank on which the 1920 report was made contains the following:

"Sec. 2. Except as herein provided, all corporations that are now required by law to pay an annual franchise tax, shall between the first day of January and the fifteenth day of March of each year and every year, be required to make a report to the Secretary of State, on blanks furnished by him, showing the condition of such corporation on the 31st day of December preceding; which report shall give the authorized capital stock of the corporation, the capital stock actually paid in, the surplus and undivided profits of the corporation, if any, the name and addresses of all

the officers and directors of the corporation, the amount of mortgages, bonded or other indebtedness of such corporation, and the amount of the last annual, semi-annual or quarterly dividend; provided, that domestic corporations having a permit or permits to do business outside the State, shall include in such report the gross receipts of such corporation from all sources and the gross receipts of the corporation from its business done in Texas, for the calendar year preceding; provided, that foreign corporations shall include in such report, the total gross receipts of the corporation from all sources and the gross receipts of the corporation in Texas for the calendar year preceding; and provided, further that where a foreign corporation has not theretofore done business in the State of Texas and is granted a permit to do business in Texas, it shall file its first report to the Secretary of State at the end of one year from the date of such permit.

"Sec. 3. Any corporation which shall fail or refuse to make the report as provided in Section Two hereof shall be assessed a penalty of ten per cent of the amount of franchise tax due by such corporation, payable to the Secretary of State, together with its franchise tax.

"Sec. 4. The reports required by this Act shall be deemed to be privileged and not for the inspection of the general public, but any party or parties who are interested in the subject matter of any report may, upon valid request in writing made to the Secretary of State, secure a copy of same.

"Sec. 5. The following officers of each and every corporation shall be deemed competent to make the report required by this Act; the president, vice-president, secretary, treasurer or general manager, and all reports provided for in this act shall be signed officially and sworn to before some officer authorized by law to administer oaths.

"Sec. 6. All laws and parts of laws in conflict with this Act are hereby repealed, but where this Act is not in conflict with any existing law, it shall be held to be amendatory thereof."

The 1921 blank contained the following:
"REPORTS TO BE FILED.

"Franchise tax reports must be filed in the office of the Secretary of State on or before March 15, 1922.
"PENALTY FOR FAILURE TO FILE BY REQUIRED TIME.

"Any corporation which shall fail to file report on or before March 15th shall be assessed a penalty of ten per cent (10%) of the amount of franchise tax due, payable to the Secretary of State, together with its franchise tax.

"WHAT OFFICERS MAY MAKE REPORTS.

"The following officers of each and every corporation shall be deemed competent to make the report required by this Act: The President, Vice President, Secretary, Treasurer or General Manager, and all reports provided for in this Act shall be signed officially and sworn to before some officer authorized by law to administer oaths.

"REPORTS SHALL BE DEEMED PRIVILEGED.

"The reports required by this Act shall be deemed privileged and not for the inspection of the public, but any party or parties who are interested in the subject matter of any report, may, upon valid request in writing to the Secretary of State, secure a copy of same.

"PENALTY FOR FAILURE TO PAY TAX BEFORE MAY 1ST.

"Any corporation which shall fail to pay franchise tax on or before May 1st shall be assessed a penalty of twenty-five per cent (25%) of the amount of franchise taxe_ due, payable to the Secretary of State, together with its franchise tax.

"THE SECRETARY OF STATE HAS NO AUTHORITY TO WAIVE OR REMIT THESE PENALTIES."

The other report blanks contain the following:

"REPORTS TO BE FILED.

"Franchise tax reports must be filed in the office of the Secretary of State on or before March 15, 1923.

"PENALTY FOR FAILURE TO FILE BY REQUIRED TIME.

"Any corporation which shall fail to file report on or before MARCH 15TH shall be assessed a penalty of ten per cent (10%) of the amount of franchise tax due, payable to the Secretary of State, together with its franchise tax.

"WHAT OFFICERS MAY MAKE REPORTS.

"The following officers of each and every corporation shall be deemed competent to make the report required by this Act: The President, Vice President, Secretary, Treasurer or General Manager, and all reports provided for in this Act shall be signed officially and sworn to before some officer authorized by law to administer oaths.

"REPORTS SHALL BE DEEMED PRIVILEGED.

"The reports required by this Act shall be deemed privileged and not for the inspection of the public, but any party or parties who are interested in the subject matter of any report, may, upon valid request in writing to the Secretary of State, secure a copy of same.

"PENALTY FOR FAILURE TO PAY TAX BEFORE MAY 1ST.

"Any corporation which shall fail to pay franchise tax on or before May 1st shall be assessed a penalty of twenty-five per

cent (25%) of the amount of franchise tax due, payable to the Secretary of State, together with its franchise tax.

"THE SECRETARY OF STATE HAS NO AUTHORITY TO WAIVE OR REMIT THESE PENALTIES

"IF CORPORATION IS NO LONGER DOING BUSINESS.

"If corporation is no longer doing business, write us, giving the date on which it ceased to transact business, and we will furnish you with necessary dissolution blanks."

We have carefully read the above information contained in blank forms as above indicated, and we find nothing therein that can be construed as a contention that the taxes here involved were claimed or demanded by the State or any state authority.

■ Relator advances the proposition that this court is without jurisdiction to go back of this legislative appropriation act to ascertain whether or not the claim on which it is based was a legal obligation of the State at the time the appropriation was made. This proposition is based on the general rule of law that "The constitutionality of a law is not to be determined on a question of fact to be ascertained by the court. If under any possible state of facts an act would be constitutional, the courts are bound to presume such facts exist; and therefore the courts will not make a separate investigation of the facts, or attempt to decide whether the Legislature has reached a correct conclusion with respect to them." 6 R. C. L., p. 112, No. 112. We find no fault with this rule when invoked in a proper case; but it has no application here. Terrell v. Middleton (Civ. App., writ ref.), 187 S. W., 367; 6 R. C. L., p. 113; Cook Co. v. Chicago Industrial School, 125 Ill., 540, 18 N. E., 183, 8 A. S. R., 386, 1 L. R. A., 437. The constitutional provision under discussion here expressly prohibits the Legislature from making any appropriation when the same shall not have been provided for by pre-existing law. If the Legislature violates this provision it is not only the right, but the duty of this court to declare such item of appropriation null and void.

■ Relator advances the further proposition that respondents are mere ministerial officers and have no right to contest the validity of this statute. This proposition is untenable. These officers are charged with the duty of obeying the valid laws of this State. The Constitution is the fundamental law and must obtain over any legislative act in contravention thereof. When a legislative act requires an officer to perform a ministerial duty he should perform it if the act is not unconstitu-

tional. If the legislative act is in contravention of the Constitution the officer should obey the Constitution. Holman v. Pabst (Civ. Ap., writ ref.), 27 S. W. (2d) 340; State v. Candland, 36 Utah, 406, 104 Pac., 285, 24 L. R. A. (N. S.) 1260, 140 A. S. R., 834. We quote the following from the opinion in the Candland case:

"We think a careful perusal of the authorities will disclose that while some of the cases contain general expressions which would seem to indicate that an officer in a mandamus proceeding against himself, requiring him to do a ministerial act, may not justify his failure to act upon the sole ground that the law directing the act is unconstitutional, the direct question now before us was not really involved in those cases. Where the question whether an officer acting ministerially, who is directly responsible for his official acts, may attack a law in a mandamus proceeding, was actually before the courts, the great weight of authority is to the effect that such an officer may, in such a proceeding, justify his refusal to act upon the ground that the law requiring the act is unconstitutional. The following well-considered cases leave little, if any, room for doubt or controversy upon this question. Van Horn v. State, 46 Neb., 62, 64 N. W., 365; Norman v. Kentucky Bd. of Exam'rs., etc., 93 Ky., 537, 20 S. W., 901, 18 L. R. A., 556; McDermott v. Dinnie, 6 N. Dak., 278, 69 N. W., 294; Denman v. Broderick, 111 Cal., 97, 43 Pac., 516; Brandenstein v. Hoke, 101 Cal., 131, 35 Pac., 562.

"When the law requires an officer to act, although the act be ministerial merely, if he is directly responsible for his official acts he may refuse to act, if in his judgment the law is in conflict with some constitutional provision, and, in case proceedings are instituted to coerce him, he may set up the supposed defect in the law as a defense. No other conclusion is permissible if the Constitution is the supreme law, and if legislative acts in conflict therewith are not merely voidable but are absolutely void. A legislative act which is in conflict with the Constitution is stillborn and of no force or effect—impotent alike to confer rights or to afford protection. This general doctrine is adopted by the courts generally and is the doctrine promulgated by the Supreme Court of the United States, as appears from the case of Norton v. Shelby County, 118 U. S., 442, 6 Sup. Ct., 1125 (30 L. Ed., 178), where Mr. Justice Field, in speaking for the court says: 'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.'"

It will be noted that the amount of overpaid taxes was $3,384.50. We do not decide the effect of this discrepancy. It is not necesasry.

The mandamus here prayed for is refused.

Opinion adopted by the Supreme Court, May 2, 1934.