**Jorge LIMON (dba Las Muchachitas Nite Club), et al., Appellants,**

**v.**

**STATE of Texas, Texas Alcoholic Beverage Commission and Doyne Bailey, Administrator, Appellees.**

**No. 03–96–00468–CV.**

Court of Appeals of Texas, Austin.

May 22, 1997.

Jennifer S. Riggs, Riggs & Associates, P.C., Austin, for Appellants.

Sharon Felfe, Assistant Attorney General, Austin, for Appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellants, eleven bar owners,[1] sought a judgment declaring that recently enacted "good conduct" bond requirements of the Texas Alcoholic Beverage Code are unconstitutional and to enjoin their enforcement by the Texas Alcoholic Beverage Commission. *See* Tex.Alco.Bev.Code Ann. §§ 11.11, 61.13 (West Supp.1997) ("Code"). The trial court determined that sections 11.11 and 61.13 are constitutional and denied the requested relief. The bar owners appeal the trial court's order. Because the appellants have standing to challenge only the actual imposition of the bonds but not their forfeiture, we will modify the trial court's judgment and affirm it as modified.

## BACKGROUND

In 1995, the legislature amended the Texas Alcoholic Beverage Code to require all Texas businesses selling alcoholic beverages for three years or less to post "conduct surety" bonds before obtaining a license or permit[2] under the Code. Establishments seeking permission to serve alcohol on their premises must post a $5,000 bond; businesses seeking to serve alcohol on their premises or sell it for off-premises consumption and that are located within one thousand feet of a school must post a $10,000 bond. Code §§ 11.11(a)(1), (2), 61.13(a).[3] The Code ex-

---

**1.** Appellants are: Jorge Limon, (dba Las Muchachitas Nite Club), Beatrice Martin (dba The Bee Hive Ice House), Jackie Clapper, (dba Some Place Else), Lori Blunt (dba Mary Jane's), Virginia Irene Hampton (dba Lynn's Saloon), Abebaw Bogale (dba Revenz–Nous Coffee), Federico Presas (dba The Y Lounge Club), June Freed Kennedy (dba The Golden Lantern Lounge), Post Time Pub, Inc.(dba Post Time Pub), Joyce Marie Medeiros (dba Roadrunner Lounge), and Connie Lee Beltran (dba Tacky's II).

**2.** Generally under the Code, "licenses" are issued to beer distributors and "permits" are issued to wine and liquor distributors. The dis-

tinction is not absolute, however, as chapters 25 and 26 deal with "wine and beer retailer permits" and are governed by the provisions applicable to retail dealers' licenses. *See* Code §§ 25.04, 26.03 (West 1995). For simplicity, we will refer collectively to the permission to sell alcoholic beverages as a "permit."

**3.** Specifically, the $10,000 bond applies to those businesses covered by the $5,000 bond in addition to those covered under chapters 22 (package store permits), 24 (wine only package store permits), and 26 (wine and beer retailer permits, off premises). Code §§ 11.11(a)(2), 61.13(a).

cepts from the bond requirement businesses that sell only beer for off-premises consumption. Both original and renewal applicants must furnish the appropriate bond with their application. The bonds are to state that the permit holder agrees that the bond shall be forfeited upon final adjudication of a violation of the Code. *Id.* §§ 11.11(b)(2), 61.13(b)(2).

After the bond requirements were enacted, the Commission sent letters to existing permit holders to notify them of the new legislation. The letters stated, "YOUR BOND MUST ACCOMPANY YOUR RENEWAL APPLICATION OR THE APPLICATION WILL BE DENIED." The Commission later notified renewal applicants who had failed to post the bond that it was forwarding their applications to the agency's legal division and recommending that they be denied. Several of the appellants testified that they were going to lose their permits because they were financially unable to purchase the bond. Appellants, through their attorney, complained to the Commission that the lack of procedures allowing them to contest the bond requirements denied them due process of law. The day before the legislation took effect, they filed this suit in district court seeking to enjoin the Commission from enforcement and asking the trial court to declare the bond provisions unconstitutional, facially and as applied, because they violate state constitutional guarantees of due course of law, equal protection, access to courts, and protections against unauthorized imposition of taxes and retroactive laws. *See* Tex. Const. art. I, §§ 3, 3a, 13, 19. After a bench trial, the trial court determined the provisions were constitutional and denied all relief sought. It made findings of fact and conclusions of law. The plaintiffs appeal; the State brings a cross-point of error contending these bar owners lack standing to challenge certain aspects of the bond requirements.

## DISCUSSION

### I. Standing

█ As a preliminary matter, we note that while all of the appellants are *subject to* the bond *requirements*, and three of them have actually posted bonds, the Commission has not attempted to forfeit any applicant's bond due to a Code violation. Standing is a component of subject matter jurisdiction that may be raised by an appellate court sua sponte. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 517 n. 15 (Tex.1995); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993). Actions for declaratory relief require the existence of a real controversy between the parties that will actually be resolved by the declaration sought. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995); *Texas Ass'n of Business*, 852 S.W.2d at 446; *Southwest Airlines v. Texas High–Speed Rail*, 863 S.W.2d 123, 125 (Tex. App.—Austin 1993, writ denied). In order to challenge a statute, the plaintiff must suffer some actual or threatened injury under the statute, and must contend that the statute unconstitutionally restricts the plaintiff's own rights. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex.1996), *Garcia*, 893 S.W.2d at 518. Courts may not make declarations on matters based upon speculative, hypothetical, or contingent situations. *Garcia*, 893 S.W.2d at 519; *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex.1980); *Empire Life Ins. Co. v. Moody*, 584 S.W.2d 855, 858 (Tex.1979). A trial court also lacks jurisdiction to enjoin conjectural or speculative events under the injunction statute. *See* Tex.Civ.Prac. & Rem.Code Ann. § 65.011 (West 1986); *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988); *City of Houston v. Cascades, Inc.*, 730 S.W.2d 59, 61 (Tex.App.—Houston [14th Dist.] 1987, writ dism'd).

█ Appellants' challenges to the statute can effectively be divided into two categories: those against actual imposition of the bond as a prerequisite to obtaining a liquor permit, and those against forfeiture of the bond upon a violation of the Code. Several appellants have refused to post the bond, causing the Commission to recommend denial of their applications. They consequently have standing to challenge the bond requirements. But there is no controversy, real or threatened, that enables us to determine whether forfeiture of the bond would be constitutional. None of the appellants has been charged

with violating the Code or a Commission rule subjecting them to bond forfeiture, and they may never be. Much of the trial focused on whether the Commission would enforce the forfeiture provision after one violation or three and whether it would grant a hearing when the situation arose. We cannot speculate on what will happen if the Commission seeks forfeiture of a bond; any opinion delivered now would be advisory. Therefore, we hold that appellants lack standing to challenge the statutory provisions as they relate to bond forfeiture. *See Garcia,* 893 S.W.2d at 519; *Coalson,* 610 S.W.2d at 747.

The trial court ruled that sections 11.11 and 61.13 do not violate, facially or as applied, the constitutional guarantees of equal protection, due course of law, or open courts. Subsection (a) of those sections imposes the bond requirement, while subsection (b) relates to forfeiture. *See* Code §§ 11.11(a), (b); 61.13(a), (b). We hold the trial court had jurisdiction to review only the constitutionality of sections 11.11(a) and 61.13(a); its judgment will be modified accordingly. Consequently, we limit our review to appellants' arguments challenging the bond as a prerequisite to obtaining a permit and do not address the first, third, or fifth points of error.[4]

In addition, the Commission contends by cross-point of error that appellants lack standing to challenge the bond requirements in three respects. First, it contends the appellants cannot challenge section 61.13, which imposes a bond on those seeking licenses to sell only beer for on-premises consumption, *see* Code § 61.13(a), because none of the appellants seeks such a license. Second, it contends they cannot challenge the $10,000 bond requirement under either section 11.11 or 61.13 because the only appellant located within 1000 feet of a school had applied at the time of trial for a food and beverage permit which would exempt it from the challenged bonding requirements. *See* Code § 28.18 (West Supp.1997). Finally, the

Commission contends the appellants cannot challenge the exclusion of beer-only off-premises retailers from the bonds because the appellants, all bar owners (on-premises dealers), "are not similarly situated to" off-premises dealers.

Regarding section 61.13(a), one of the appellants, Federico Presas, holds a license subject to that provision and thus has standing to challenge its constitutionality. Because the other appellants bring the same facial challenges and seek the same relief as Presas, we need not address their individual standing. *See Barshop,* 925 S.W.2d at 627; *Garcia,* 893 S.W.2d at 519. Appellants have standing to challenge section 61.13(a).

■ Regarding the $10,000 bond, Post Time Pub was subject to the $10,000 bond at the time of trial. Simply because Post Time Pub may be exempt from the bond requirement in the future if it obtains a food and beverage permit does not deprive it of standing to challenge the bond. Accordingly, the appellants may challenge the $10,000 bond requirement.

■ Finally, all of the appellants are bar owners subject to the bond requirement. A party need not be identically situated to challenge a statutory classification. Appellants, as permittees under the Code, have standing to complain that the statute impermissibly favors retailers selling beer for consumption off premises by exempting them from the bond requirement. We overrule the cross point of error.

## II. The Challenges

We will first address the constitutional challenges voiced in appellants' fourth and sixth points of error. The fourth point of error asserts that requiring a bond effectively revokes existing permits without a hearing, in violation of the constitutional guaran-

---

4. The first point of error essentially contends the agency's rule for enforcing the forfeiture provision unconstitutionally contradicts the language of the statute. Appellants' third point of error asserts that the bond requirement is an unconstitutional occupation tax because the flat bond amount is not related to the severity of the of-

fense for which it is forfeited. *See* Tex. Const. art. VIII, § 2(a) (West 1997). The fifth point of error asserts the bond requirement violates the open courts clause by making bond forfeiture a condition precedent for initiating judicial review. *See* Tex. Const. art. I, § 13 (West 1997).

tee to due process of law.[5]  *See* Tex. Const. art. I, § 19.  In their sixth point of error, appellants contend the bond provisions are unconstitutionally retroactive.  *See* Tex. Const. art I, § 16.

## A.  Due Process of Law

■■  A due process analysis requires a two-part inquiry: first, whether the claimant has a liberty or property interest that is entitled to due process protection, and if so, how much protection is necessary in the particular circumstances.  *University of Texas Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995); *Bexar County Sheriff's Civ. Serv. v. Davis,* 802 S.W.2d 659, 661 (Tex.1990).[6] Due process generally does not protect privileges granted under the state's police power. *House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 657 (Tex.1965).

■■  It is well established that a permit to sell alcoholic beverages is a mere personal privilege granted by the legislature.  Code § 11.03 (West 1995); *Texas Alcoholic Beverage Comm'n v. Macha,* 780 S.W.2d 939, 943 (Tex.App.—Amarillo 1989, writ denied); *State v. Harris,* 342 S.W.2d 177, 181 (Tex. App.—Dallas 1960, no pet.); *Bradley v. Texas Liquor Control Bd.,* 108 S.W.2d 300, 302–03 (Tex.Civ.App.—Austin 1937, no writ); *see also Texas Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex. 1970).  The Alcoholic Beverage Code was enacted as "an exercise of the police power of the state for the protection of the welfare, health, peace, temperance, and safety of the people of the state."  Code § 1.03 (West 1995); *see Four Stars Food Mart, Inc. v. Texas Alcoholic Beverage Comm'n,* 923 S.W.2d 266, 271 (Tex.App.—Fort Worth 1996, no writ); *Bavarian Properties Inc. v. Texas Alcoholic Beverage Comm'n,* 870 S.W.2d 686, 687–88 (Tex.App.—Fort Worth 1994, writ denied).  Because an alcoholic bev-

erage permit is merely a privilege, applicants do not have a constitutionally protected interest in obtaining it and are not entitled to due process of law.  The legislature has not provided for notice and hearing prior to the Commission's refusal to issue permits;[7] consequently, the Commission may refuse to issue a permit, without a hearing, to an applicant who fails to post the bond.

■■  Permits and licenses issued under the Code must be renewed annually. Code § 11.09 (West 1995).  Appellants argue that because they already hold permits they are entitled to notice and hearing before they are denied renewal due to failure to post the bond.  It is true that in some cases once the state has granted a privilege to conduct one's business or profession, such privilege may become a right protected by the due process clause.  *See House of Tobacco,* 394 S.W.2d at 657 (citing *Industrial Accident Bd. v. O'Dowd,* 157 Tex. 432, 303 S.W.2d 763 (1957)); *Denton v. City of Austin,* 587 S.W.2d 56, 58 (Tex.Civ.App.—Beaumont 1979, no writ).  However, in those situations due process applies to protect the claimant from arbitrary revocation or suspension of the right to conduct business *during the term such right was granted.*  This statute does not interfere with the original term of a permit but adds the bond as a requirement to obtain a permit for the *next* term.  Such is a valid exercise of the state's police power. We hold that renewal applicants do not have a protected interest in renewing their permits.

■■  Moreover, assuming for the sake of argument that renewal applicants have a protected interest, the fact that a statute does not expressly provide for notice and hearing does not render it unconstitutional.  *House of Tobacco,* 394 S.W.2d at 658.  Unless the statute expressly provides otherwise, we pre-

---

5.  As we have discussed, we have no jurisdiction over the part of point of error four which addresses bond forfeiture.

6.  We note that the due process clause of the federal constitution places the same restrictions on the exercise of state legislative power as the similar clause in the Texas Constitution.  *University Of Texas Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (procedural due process); *Massa-*

*chusetts Indemnity & Life v. Texas State Bd. of Ins.,* 685 S.W.2d 104, 113 (Tex.App.—Austin 1985, no writ) (substantive due process).

7.  We note that the Code does provide for notice and hearing before the Commission may *cancel* or *suspend* a permit or license.  Code § 11.61(b)(8).

sume the legislature intended the agency to proceed in accordance with the constitution. *Id.* Applicants denied permits may request a hearing under the Texas Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.051 (West Supp.1997) ("APA"); *Lindsay v. Sterling,* 690 S.W.2d 560, 562 (Tex. 1985). A party who is refused a license or permit is also entitled to judicial review in district court after exhaustion of administrative remedies. *See* Code § 11.67 (West 1995); Tex. Gov't Code Ann. §§ 2001.171, .176 (West Supp.1997); *Texas Alcoholic Beverage Comm'n v. Sfair,* 786 S.W.2d 26, 27–28 (Tex.App.—San Antonio 1990, writ denied). We note that a hearing on an applicant's failure to post the bond would seem to us to be meaningless; a bond is either posted or it is not. In any event, an applicant may request a hearing pursuant to the APA. For all of these reasons, appellants' due process challenges must fail. We overrule the fourth point of error.

■ Because businesses must reapply for a new permit each year, those holding permits prior to the legislation's effective date will not be subject to the bond until they reapply. *See State v. Bush,* 151 Tex. 606, 253 S.W.2d 269, 273 (1952). We overrule the sixth point of error contending the legislation is unconstitutionally applied retroactively.

**B. Equal Protection**

In their second point of error, appellants contend the bond requirements are imposed unequally in violation of the equal protection clause. *See* Tex. Const. art. I, § 3.

1. *Standard of Review*

■ Because appellants, as bar owners, are not a suspect class and because obtaining a liquor license is not a fundamental right that entitles them to heightened constitutional scrutiny, we review their equal protection challenges under a rational basis test. *See Retail Merchants Ass'n v. Handy Dan Hardware, Inc.,* 696 S.W.2d 44, 54 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Harris,* 342 S.W.2d at 181. Appellants at-

tempt to elevate our scrutiny by contending the provisions disparately impact minority and women-owned businesses. The only testimony supporting this contention is a private bonding agent's opinion that the bond disproportionately affects minority and women-owned businesses. Even if we determined this to be the case, which the trial court did not,[8] one lodging a constitutional challenge based on disparate impact must show that the government intended to discriminate. Appellants have made no such showing. Their real complaint is that the provisions prevent those in less fortunate economic circumstances from obtaining or renewing their liquor permits. Poverty is not a suspect class entitling one to heightened scrutiny. *San Antonio Indep. Sch. District v. Rodriguez,* 411 U.S. 1, 22, 93 S.Ct. 1278, 1290–91, 36 L.Ed.2d 16 (1973). Our analysis, therefore, proceeds under the rational basis test.

■ Under the rational basis test, the statute need only be rationally related to a legitimate end of government. *See Burroughs et al. v. Lyles,* 142 Tex. 704, 181 S.W.2d 570, 574 (1944); *Massachusetts Indemnity & Life Ins. Co. v. Texas State Bd. of Ins.,* 685 S.W.2d 104, 114 (Tex.App.—Austin 1985, no writ). The law must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Lens Express, Inc. v. Ewald,* 907 S.W.2d 64, 69 (Tex.App.—Austin 1995, no writ); *Retail Merchants Ass'n,* 696 S.W.2d at 54. We presume the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Helms v. Texas Alcoholic Beverage Comm'n,* 700 S.W.2d 607, 614 (Tex.App.—Corpus Christi 1985, no writ); *Mouton v. State,* 627 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1981, no writ).

■ The trial court's findings of fact have a limited role in our equal protection analysis. *See Barshop,* 925 S.W.2d at 625. We are to review the entire record to determine whether the statute is constitutional under any state of facts, and we should presume

---

8. The trial court found as fact that the challenged provisions "do not operate to the detriment of

minorities and women as a class."

that such facts exist without making a separate investigation or attempting to decide whether the legislature correctly interpreted the facts. *Id.; Corsicana Cotton Mills v. Sheppard,* 123 Tex. 352, 71 S.W.2d 247, 250 (1934).

2. *Review*

■■■ Appellants first contend there is no rational basis for imposing the bond only on establishments licensed for less than three years. They posit that a two-year permit holder will suffer a $5,000 or $10,000 penalty for the same infraction of the Code for which a five-year permit holder will suffer no penalty; they contend such a distinction is arbitrary. The State asserts that the purpose of the bond requirement is to secure compliance with the Code, and introduced evidence which proves that most violations occur within the first few years of a permit holder's business. In fact, the Commission recorded fewer than half as many violations committed by businesses in their second three years of business as by those in their first three years.[9] Requiring a good-conduct bond from those holding permits for more than three years would not have the same deterrent effect as subjecting younger businesses to the requirement. We note that permit holders exhibiting past noncompliance may be subject to the bond even if they have held a permit for more than three years. *See* Code § 11.11(e) (West 1995). We conclude a rational basis exists for the three-year distinction.

■■■ Appellants next contend there is no rational basis for requiring establishments located within one thousand feet of a public school to post a higher bond. Again they contend the distinction is arbitrary, arguing that neighboring businesses with the same license may be subject to different bond amounts. The State introduced no evidence to support the distinction, but the legislative action does not fail if we are able to discern a rational basis for the distinction. *Retail Merchants Ass'n,* 696 S.W.2d at 54. Classifications are set aside only if they are based solely on reasons entirely unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them. *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597, 601–02 (1957); *Retail Merchants Ass'n,* 696 S.W.2d at 54. The legislature enjoys considerable leeway to draw the line between two similarly situated persons, provided the line is not unreasonable. *Clements v. Fashing,* 457 U.S. 957, 962–63, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982). The legislature has already seen fit to grant local governments the authority to prohibit the sale of alcoholic beverages by businesses within 300 feet of a church, public school, or public hospital. Code § 109.33 (West 1995). The legislature has also given the Commission and certain local governments the authority to deny permits when "the place or manner" of the business warrants a refusal based on "the general welfare, health, peace, morals, safety, and sense of decency of the people." Code §§ 11.46(a)(8); 61.42(a)(3) (West 1995); *Eckert v. Jacobs,* 142 S.W.2d 374, 377 (Tex. Civ.App.—Austin 1940, no writ) (city may prohibit sale of alcohol near schools). In *Helms v. Texas Alcoholic Beverage Comm'n,* 700 S.W.2d 607 (Tex.App.—Corpus Christi 1985, no writ), the court of appeals held that an applicant denied a permit to sell beer and wine one block from an elementary school was not denied equal protection even though there were other similar businesses on the same street further away from the school. *Id.* at 613. Stricter regulation of businesses selling or serving alcoholic beverages around civic buildings such as schools, churches, and

---

9. Appellants argue that (1) the trial court's finding of fact that "most violations occur during an establishment's first years of business" is unsupported by legally or factually sufficient evidence, and (2) the Commission's statistics are misleading because there are *more* younger businesses to commit violations in early years because many go out of business. As already discussed, our review does not require us to determine whether the trial court's findings of fact are supported by the record. *See Barshop,* 925 S.W.2d at 625. In addition, we note that "a classification does not fail rational-basis review because it is not made with mathematical nicety." *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) (citations omitted). The evidence introduced by the Commission reasonably supports the theory that more violations occur in the first years of business, and we may presume the legislature espoused such a theory in enacting constitutional legislation.

hospitals is warranted because of increased traffic and dangers to area children and the general public. *See id.; Eckert,* 142 S.W.2d at 377. In addition, a higher bond will serve as an added deterrent to selling alcoholic beverages to minors who congregate near schools. Certainly if the legislature chooses to allow permits in such close proximity to schools it may impose an additional incentive for compliance with the alcoholic beverage laws. We conclude that a rational basis exists for the increased amount of the bond.

■ Appellants thirdly complain that the statute exempts from the bond requirement "beer-only off-premises" retailers. These licenses, governed by chapter 71, are generally held by convenience stores that sell only beer. *See* Code § 71.01 (West 1995). However, retailers desiring to sell all types of beer, including malt liquor, must also apply for a wine or liquor permit issued under chapter 22 or 24, which are subject to the bond requirement. The State introduced evidence showing that only about five percent of businesses licensed under chapter 71 hold *only* a chapter 71 license. Most of these operate in counties that prohibit the sale of alcohol other than beer. It is rational for the legislature to exempt such a small percentage of applicants from the bond requirement. In addition, the State's evidence showed these businesses commit fewer Code violations. The exemption of such businesses from the bond has a rational basis.

■ Appellants finally point to a section of the Code which directs the Commission to hold a hearing before granting or denying a permit to various types of establishments [10] "if a sexually oriented business is to be operated on the premises to be covered." The statute gives the Commission discretion to grant or deny an original or renewal permit to ordinary applicants. Code § 11.43(a), (b) (West 1995). The primary purpose of the

hearings regarding sexually oriented businesses is to allow the *public* to object to such businesses being located in their neighborhoods. *See id.* § 11.43(c), (d) (West 1995). Such a distinction is not irrational. In any event, as already discussed, any applicant may request a hearing under the APA. Because each of appellants' challenges on equal protection grounds is supported by a rational basis, we overrule the second point of error.[11]

## CONCLUSION

Sections 11.11(a) and 61.13(a) of the Texas Alcoholic Beverage Code, requiring applicants for a license or permit to sell alcoholic beverages to post conduct surety bonds, do not violate the due course of law and equal protection clauses of the Texas Constitution. Appellants do not have standing to challenge the statute as it relates to forfeiture of the bond upon violation of the Code. We modify the trial court's judgment in conformance with our opinion, and as modified, affirm the judgment.

---

10. In particular, the provision applies to original mixed beverage permits, private club registration permits, wine and beer retailer's permits, and retail dealer's on-premises licenses. *See* Code § 11.43(b) (West 1995). The Commission must also hold a hearing on renewal applications covering sexually oriented businesses if fifty percent of the residents within three hundred feet of the premises sign a petition. Code § 11.43(c) (West 1995).

11. Appellants also complain on equal protection grounds that those subject to the bond are deprived of a defense granted in the Code to other permit holders. *See* Code §§ 11.11(b)(2); 61.13(b)(2) (West Supp.1997); 106.14(a) (West 1995). The statute states that the bond will be forfeited despite the existence of the defense. Appellants do not have standing to make this challenge and we lack jurisdiction over it.