# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00580-CV

**McManus-Wyatt Produce Co., Inc. d/b/a McManus-Wyatt Produce Marketing Co., Inc., Appellant**

**v.**

**Texas Department of Agriculture Produce Recovery Fund Board; Eddy Carnes; Carnes Farms, Inc.; and Allen Carnes, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN202210, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

Appellant McManus-Wyatt Produce Co., Inc. (McManus) appeals from an order of the district court affirming a decision in favor of the Texas Department of Agriculture Produce Recovery Fund Board (the Board), Eddy Carnes, Carnes Farms, Inc., and Allen Carnes.[1] Carnes filed a breach-of-contract complaint against McManus with the Board, which awarded Carnes $35,000 to be paid out of the State's Produce Recovery Fund. The Board also ordered that McManus pay Carnes an additional $103,439.74. McManus argues that the Board's determination in this case

---

[1] The Texas Department of Agriculture (the Department) takes a neutral position on the merits of this appeal. We will refer to the remaining appellees collectively as "Carnes."

violated its state constitutional right to a jury trial.[2] We agree that the Board's determination violated McManus's right to jury trial and will reverse the final order of the district court and render judgment vacating the order of the Board.

## BACKGROUND

In 1999, McManus and Carnes entered into a contract for the sale of carrots. Carnes would grow carrots, and McManus would pay Carnes $60.00 per ton for carrots conforming to certain size and grade specifications. McManus would provide labor and equipment to harvest Carnes's carrots. After some of the carrots were harvested, the parties accused each other of breaching the contract. McManus argued the majority of the carrots did not conform to the size and grade specifications of the contract, while Carnes argued that McManus refused to harvest the remaining carrots as required by the contract.

On August 28, 2000, Carnes filed complaints against McManus with the Board.[3] On November 3, 2000, before receiving notice of Carnes's complaint before the Board, McManus filed a suit for breach of contract in Hidalgo County district court. Carnes answered and filed a

---

[2] McManus asserted other grounds in support of its contention that the Board's determination was invalid. Because we decide this appeal on McManus's jury-trial issue, we need not address McManus's other grounds.

[3] The Texas Agriculture Code states that a person who handles "perishable commodities, as owner, agent, or otherwise," must, with few exceptions not applicable here, obtain a license or an identification card issued by the Department of Agriculture. Tex. Agric. Code Ann. § 101.003 (West Supp. 2004). If a party (Carnes) is aggrieved by a license holder (McManus), the agriculture code allows the Board to determine any amounts owed to the aggrieved party. *See id.* §§ 103.006-.008 (West Supp. 2004). We will discuss the Board in detail below.

2

counterclaim that included the same claim Carnes was asserting before the Board. Carnes also filed

a request for a jury trial in the Hidalgo County suit.[4]

On June 26, 2001, McManus filed a motion to dismiss Carnes's action before the

Board, alleging that the Board may not accept "claims for which a complainant has filed suit in a

court of competent jurisdiction." 4 Tex. Admin. Code § 14.10(a)(2) (2004).[5] McManus argued that

Carnes's claim must be dismissed pursuant to rule 14.10 because Carnes had filed a non-compulsory

counterclaim in Hidalgo County.[6] *See id.* McManus argued that the Board's failure to dismiss

would deprive McManus of due process and its right to a jury trial and could possibly lead to a

double recovery or inconsistent results with the Hidalgo County suit. Although rule 14.10 prohibits

the Board from accepting a complaint where a claimant has already filed suit in "a court of

competent jurisdiction," the Department denied McManus's motion to dismiss. Carnes's claim

proceeded to a hearing before the Department.

---

[4] Once a jury trial is demanded by a party, it is unnecessary for any other party to request a jury. *See* Tex. R. Civ. P. 216; *Almaguer v. Jenkins*, 882 S.W.2d 903, 904 (Tex. App.—Corpus Christi 1994, no writ) ("A jury request and fee payment inure to the benefit of all parties.").

[5] Because the rule remains unchanged, we cite to the current rule for convenience.

[6] Because Carnes's breach-of-contract claim was pending before the Board, McManus cites rule 97 of the Texas Rules of Civil Procedure and insists that Carnes's breach-of-contract counterclaim was not compulsory. *See* Tex. R. Civ. P. 97(a) ("a pleading shall state as a [compulsory] counterclaim any claim within the jurisdiction of the court, *not the subject of a pending action*") (emphasis added). Carnes terms its counterclaim compulsory because a "pending action," as referenced in Texas Rule of Civil Procedure 97, refers to a lawsuit, as opposed to an administrative claim. *See generally, e.g.*, *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998); *Getty Oil v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992). For purposes of our disposition, we need not determine whether Carnes's counterclaim was compulsory.

On December 14, 2001, a hearing officer of the Department issued a proposed decision that Carnes take nothing on its claim. Carnes filed a protest with the Board, and on April 3, 2002, the Board issued its order rejecting the hearing officer's proposed decision and awarding Carnes a total of $138,439.74 in damages—$35,000 of this amount to be paid directly from the Fund, and the remaining amount to be paid by McManus.[7] McManus was then required to pay or agree in writing to pay these amounts or face suspension of its license for four years. *See* Tex. Agric. Code Ann. § 103.009(a), (c) (West Supp. 2004).[8]

---

[7] At oral argument, Carnes acknowledged that the Fund has not yet paid any amount on Carnes's claim but is awaiting the result of this appeal.

[8] Section 103.009 of the agriculture code provides:

§ 103.009. Reimbursement of Fund and Payment to Complaining Party by Licensee

(a) If the department pays a claim against a license holder, the license holder shall:

(1) reimburse the fund immediately or agree in writing to reimburse the fund on a schedule to be determined by rule of the department; and

(2) immediately pay the aggrieved party any amount due that party or agree in writing to pay the aggrieved party on a schedule to be determined by rule of the department.

. . . .

(c) If the license holder does not reimburse the fund or pay the aggrieved party, or does not agree to do so, in accordance with this section, the department shall issue an order canceling the license and may not issue a new license to that person for four years from the date of cancellation. . . .

Tex. Agric. Code Ann. § 103.009(a), (c) (West Supp. 2004).

4

McManus challenged the Board's order in Travis County district court, again arguing that the Board's failure to dismiss deprived McManus of due process and its right to a jury trial and could possibly lead to a double recovery or inconsistent results with the Hidalgo County suit. The district court affirmed the decision of the Board. This appeal followed.

## DISCUSSION

### *The Texas Produce Recovery Fund*

In order to frame our analysis, a discussion of the Produce Recovery Fund is necessary. As explained above, the Texas Agriculture Code allows persons to bring claims before the Board if they are aggrieved by merchants or retailers licensed under the Texas Agriculture Code. *See* Tex. Agric. Code Ann. §§ 103.005-.008 (West Supp. 2004); 4 Tex. Admin. Code § 14.10 (2004).[9] The Department has established a trust fund—the Produce Recovery Fund (the Fund)—to

[9] The Texas Administrative Code provides:

§ 14.10. Claims Against the Fund

(a) What claims can be filed. Only claims against a licensee for loss or damages due to a violation of the terms or conditions of a contract for the sale of perishable commodities grown in Texas may be filed. The following claims may not be accepted:

(1) Claims against a cash dealer, a person or company not licensed under Chapter 101 and claims for perishable commodities grown out-of-state.

(2) Claims filed under the Perishable Agriculture Commodities Act (PACA) that are accepted as formal complaints and adjudicated by the United States Department of Agriculture, or claims for which a complainant has filed suit in a court of competent jurisdiction.

(b) Who may file. A person who suffers a loss or damages due to the violation of the terms or conditions of a contract by a licensee may file a claim against the Fund.

5

reimburse persons aggrieved by such license holders. *See* Tex. Agric. Code Ann. §§ 103.001-.019 (West 1995 & Supp. 2004). If an aggrieved party initiates a claim for reimbursement, the Department investigates the complaint, and a Department hearing officer determines the amount, if any, due the aggrieved party. *Id.* § 103.006(a); 4 Tex. Admin. Code § 14.11(a) (2004). If the license holder or aggrieved party disputes the Department's determination, the Board conducts a hearing; if a party is not satisfied with the decision of the Board following the hearing, it can appeal the Board decision to a district court for a substantial-evidence review. Tex. Agric. Code Ann. § 103.006(b); *see also* Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000 & Supp. 2004).

The Fund can pay all of the first $2000 of any claim and seventy percent of the claim above $2000. Tex. Agric. Code Ann. § 103.008(a). The total payment of a claim from the Fund may not exceed $35,000. *Id.* § 103.008(b). However, even though only $35,000 may be disbursed from the Fund, the Board is authorized to adjudicate the *total* damage claim. *Id.* § 103.006(a), .008(b). If the Department determines that the complainant is entitled to damages from the license holder, the license holder must reimburse the Fund for any award up to $35,000 and pay, or agree in writing to pay, any additional amount to the aggrieved party. *Id.* § 103.009(a). If the license holder fails to do so, the Department shall issue an order canceling the license holder's license and may not issue a new license for four years from the date of cancellation. *Id.* § 103.009(c).

This administrative scheme represents an alternative remedy to a breach-of-contract claim for persons aggrieved by license holders. *See generally id.* §§ 103.001-.019. Instead of suing

---

4 Tex. Admin. Code § 14.10(a), (b) (2004).

6

for breach of contract in district court, the claimant may bring its claim before the Board with the hope of obtaining a recovery that is quicker and more efficient than might be available through the court system. Because the Board can award only seventy percent of a claim above $2000 and cannot award more than $35,000 from the Fund, the remedy may be less than would be available for a claimant in district court.[10] However, the Board may still require that the license holder pay any amount in excess of $35,000 to the aggrieved party or face license cancellation.

A license holder is afforded no similar remedy if it desires to bring a claim against a non-license holder. The only capacity in which a license holder may appear is as a defendant; there is no provision that allows a license holder to present its own breach-of-contract claim, nor is there a provision allowing the Board to declare damages owed to the license holder. If the license holder loses before the Board, the only available remedy is a substantial-evidence review in district court. *Id.* § 103.006(b). If the Board's decision is affirmed, the license holder must pay, or agree in writing to pay, any amounts due or lose its license for four years. *Id.* § 103.009(c). Finally, the license holder's case—which is presented only in the license holder's capacity as a defendant—is determined not by a jury of its peers, but by a Department hearing officer or by the Board itself.[11]

***The Federal Counterpart***

McManus has repeatedly argued that the Board was required by rule 14.10 to dismiss Carnes's complaint once both parties had filed suit in Hidalgo County. *See* 4 Tex. Admin. Code

---

[10] This, of course, assumes that the Board and the trier of fact in district court determine identical damages.

[11] "The Produce Recovery Fund Board is composed of five members appointed by the governor with the advice and consent of the senate. Two members must be producers, one must be a license holder licensed under Chapter 101, and two must be members of the general public." Tex. Agric. Code Ann. § 103.003 (West Supp. 2004).

§ 14.10 (2004). Because the rule specifically references the United States Perishable Agricultural

Commodities Act (PACA), *see* 7 U.S.C.A. §§ 499a-t (West 1999), it is helpful to our analysis to

compare the salient provisions of PACA with the corresponding provisions of the Texas statute.

License holders under PACA are divided into three categories:  commission merchant, dealer, and

broker.  *Id.* § 499a(b)(5)-(7).[12]  License fees collected from commission merchants, dealers, and

brokers are deposited in a PACA Fund.  *Id.* § 499c(5).[13]  A person aggrieved by a license holder can

file a complaint with the Secretary of Agriculture or file suit in a court of competent jurisdiction.

*Id.* § 499e(b).[14]

     If a complaint is filed with the Secretary of Agriculture, the Secretary investigates the

claim.  *Id.* § 499f(c)(1).  If the Secretary "substantiates the existence of violations" of PACA, the

Secretary affords the commission merchant, dealer, or broker an opportunity for a hearing before an

examiner.  *Id.* § 499f(c)(2).  However, if the amount of damages asserted is less than $30,000, no

hearing is necessary and "the respondent's answer may be supplied in the form of depositions or

verified statements of fact."

---

[12]  License holders are divided into these three categories—commission merchant, dealer, and broker—based upon the scope of activities they perform.  7 U.S.C.A. § 499a(b)(5)-(7) (West 1999). The Texas Agriculture Code included similar categories until 1995, when the legislature simplified the categorization of license holders.  *See* Act of June 5, 1995, 74th Leg., R.S., ch. 269, 1995 Tex. Gen. Laws 2603, 2603-08.

[13] The PACA Fund, unlike the Texas Produce Recovery Fund, is available merely for "expenses necessary to the administration of this chapter."  7 U.S.C.A. § 499c(g) (West 1999).  It is not available to pay claims to aggrieved parties.  *See id.*

[14]  PACA specifically provides that it "shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of [PACA] are in addition to such remedies."  *Id.* § 499e(b) (West 1999).

Notably, PACA provides a drastically different method for enforcing a claim than that provided by the Texas statute. If a license holder does not comply with the order of the Secretary, the aggrieved party must file suit in district court in order to enforce liability. *Id.* § 499g(b). "Such suit in the district court shall proceed in all respects like other civil suits for damages, except that the findings and orders of the Secretary shall be prima-facie evidence of the facts therein stated . . . ." *Id.*

Also, a United States district court will ultimately determine an appeal of a reparation order by the Secretary. Instead of a substantial-evidence review, as is provided under the Texas statute, a party appealing from an order of the Secretary under PACA can file suit in United States district court for a trial de novo. *Id.* § 499g(c). "Such suit in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated." *Id.*

Like the Texas statute, a license holder's license is suspended if the license holder fails to comply with the order of the Secretary. *Id.* § 499g(d). However, under PACA this suspension becomes effective *only after* a license holder fails to appeal or is unsuccessful on appeal. *Id.* Also, the suspension is effective not for four years, as under the Texas statute, but until the license holder complies with the order of the Secretary. *Id.*

### Right to Jury Trial Under the Texas Constitution

Courts may review an agency action if the action adversely affects a vested property right or otherwise violates a constitutional right. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)). In reviewing the Board's application of the Fund, "we must

9

reverse [the Board's] decision if it violates a constitutional or statutory provision." *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995) (citing Tex. Gov't Code Ann. § 2001.174(2)(A) (West 2000)).

The Texas Constitution provides a right of trial by jury: "The right of trial by jury shall remain inviolate." Tex. Const. art. I, § 15.

> This [language in section fifteen] has been interpreted to mean that in each case where the issue [of a right of trial by jury] is raised, an inquiry should be made into the practice before the constitution was adopted to determine whether such issues were tried by a jury; hence, any right to a jury trial that existed at the time of the adoption of the constitution is confirmed.

*Id.* interp. commentary (West 1997) (citing *White v. White*, 196 S.W. 508 (Tex. 1917)). The Texas jury-trial provision confers an exceptionally broad jury-trial right upon litigants. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) (citing *State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291-93 (Tex. 1975)).

In determining the constitutionality of the Board's order as applied to McManus, we presume that the legislature intended the agency to act in accordance with the constitution. *See Limon v. State*, 947 S.W.2d 620, 626-27 (Tex. App.—Austin 1997, no writ). In determining the validity of the Board's actions as applied to McManus, we have examined other administrative schemes involving the same constitutional right implicated here. Through our research, it appears that the closest analogue is the Texas Workers' Compensation Act, an administrative scheme in which the legislature restricted the right to jury trial and completely displaced a common-law right. *See Garcia*, 893 S.W.2d at 520-24, 526-30. In analyzing whether the workers' compensation act

10

violated our constitution's right to jury trial found in article I, section fifteen, the supreme court

stated:

> The Act is a substitute for the common law negligence remedy, which was an action tried to a jury in 1876. Therefore, at least with regard to the central issues regarding income and death benefits, the Act's remedy is analogous to a claim for which the right to jury trial is constitutionally preserved.
>
> It is important, however, to distinguish between the procedural right to jury trial and the substantive right to preservation of common law causes of action. Although legislation altering or restricting a cause of action is subject to scrutiny under the open courts doctrine, this substantive change does not implicate the right to jury trial, *as long as the relevant issues under the modified cause of action are decided by a jury. See Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 562 (1916) . . . .
>
> . . . The Legislature has now replaced the pre-1913 common law cause of action which based compensation in part on loss of earning capacity with a statutory cause of action which bases compensation in part on impairment. The jury is allowed to determine impairment.
>
> . . . [T]he use of the 15 percent threshold is a substantive part of the benefit scheme. The jury decides whether the claimant is at least 15 percent impaired. There is no denial of trial by jury.

*Id.* at 527-28 (emphasis added). The supreme court then determined that the legislature did not so

restrict the jury's role in deciding compensation issues that it transgressed the inviolate right to jury

trial. *See id.* at 528-30.

Here, Carnes's claim before the Board was a simple breach-of-contract cause of

action, which is the only cause of action the Board may consider. *See* 4 Tex. Admin. Code § 14.10

(2004). McManus's right to defend against such a claim, and to bring its own claim for breach of

contract, were established rights that could be tried to a jury before the enactment of our constitution

in 1876. *See, e.g.*, *Malone v. Scott*, 40 Tex. 460 (1873); *Mims v. Mitchell*, 1 Tex. 443 (1846). *But*

11

*cf. Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 450-51 (Tex. 1993) ("agencies' assessments of environmental penalties are not actions, or analogous actions, to those tried to a jury at the time the constitution of 1876 was adopted"). Legislation altering or restricting a cause of action does not implicate the right to jury trial "as long as the relevant issues under the modified cause of action are decided by a jury." *Garcia*, 893 S.W.2d at 527. Under the state administrative scheme at issue here, and unlike its federal counterpart, the right to jury trial was completely abrogated. At no point was McManus able to have a jury determine the contract dispute; rather, the state administrative scheme deprived McManus of its right to trial by jury and required that the entire contract dispute be determined not by a jury of McManus's peers, but by the Board. Finally, the only recourse available to McManus to appeal the Board's decision was a substantial-evidence review in state district court, unlike the de novo review provided by the federal act. Because McManus was unable to receive a jury trial on a breach-of-contract claim—an action tried to a jury at the time the Texas Constitution of 1876 was adopted—we hold that the Board's imposition of money damages against McManus under the facts of this case violated McManus's right to trial by jury. Tex. Const. art. I, § 15; *see Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 22 (Tex. 2000) (Owen, J., dissenting);[15] *Garcia*, 893 S.W.2d at 527.

---

[15] In *Cash America International Inc. v. Bennett*, 35 S.W.3d 12, 19 (Tex. 2000), a majority of the supreme court concluded that, because the Texas Pawnshop Act provided an alternative, not exclusive, remedy for aggrieved patrons of pawn shops, the plaintiff was not required to exhaust the remedies provided thereunder. Accordingly, the majority did not reach the right to jury trial. Justices Owen and Hecht dissented from the majority opinion, but, because only a substantial-evidence review of the Consumer Credit Commissioner's decision was available, they concluded that the plaintiff's inability "to receive a jury trial on issues substantially similar to actions tried to a jury at the time the Texas Constitution of 1876" violated the jury-trial provision of article I, section fifteen of the Texas Constitution. *Id.* at 22 (Owen, J., dissenting).

## CONCLUSION

Because McManus was deprived of its right to have a jury decide the breach-of-contract dispute, a claim that could be tried to a jury before the enactment of our constitution, we conclude that the Board's order violated McManus's rights to trial by jury. We hold that the Board's order is unconstitutional as applied to McManus.[16] We therefore reverse the final order of the district court and render judgment vacating the order of the Board.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Reversed and Rendered

Filed: July 1, 2004

_____

[16] We declare only that the Board's order is unconstitutional as applied to McManus. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995) (in "as applied" challenge, plaintiff argues that statute operates unconstitutionally as to plaintiff because of plaintiff's particular circumstances). We do not reach the general constitutionality of the Fund or of the ability of the Board to disburse amounts from the Fund.