BAVARIAN PROPERTIES, INC., d/b/a
Club Legends, Appellant,

v.

TEXAS ALCOHOLIC BEVERAGE COM-
MISSION, Chris Harris, Toby Goodman,
and Richard Greene, Appellees.

No. 2–93–109–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 16, 1994.

Rehearing Overruled March 22, 1994.

Steven H. Swander, Fort Worth, for appellant.

Don E. Walden, Austin, for appellee.

Cribbs & McFarland, P.C., and Paul F. Wieneskie, James A. Cribbs, Paul T. Francis, Arlington, for appellees/intervenors Chris Harris, Toby Goodman and Richard Greene.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

Bavarian Properties, Inc., d/b/a Club Legends (Legends), appeals from the trial court's finding that there was substantial evidence to support the Texas Alcoholic Beverage Commission's (TABC's) denial of Legends' application for a mixed beverage permit, a mixed beverage late hours permit, and a beverage cartage permit (the permits).

We affirm.

Because this case has a rather complicated procedural history, we set it out below:

January 25, 1993: An administrative law judge recommended that the permits be granted.

February 12, 1993: State Senator Chris Harris, State Representative Toby Goodman, and Arlington Mayor Richard Greene filed their exceptions to the administrative law judge's recommendation.

March 10, 1993: After a hearing, TABC denied Legends' application for the permits. TABC found that the sale of alcoholic beverages, coupled with the fact that the only exit from Legends is directly onto the frontage road as it merges with an exit ramp, created a significant risk to public safety.

March 30, 1993: Legends filed a motion for rehearing.

April 9, 1993: TABC overruled the motion for rehearing.

April 30, 1993: Legends filed its original petition in the trial court.

May 7, 1993: The trial on Legends' petition was held.

May 24, 1993: The trial court rendered judgment *nunc pro tunc*, affirming TABC's order.

In two points of error, Legends complains the trial court improperly affirmed TABC's order denying the permits because: (1) TABC exceeded its statutory authority by altering the administrative law judge's findings of fact and conclusions of law; and (2) there is not substantial evidence Legends' location creates a risk different from and more dangerous than other licensed establishments serving alcoholic beverages in the immediate vicinity.

■ Tex.Gov't Code Ann. § 2001.058(e) (Vernon Pamph. 1994) provides:

A state agency may change a finding of fact or conclusion of law made by the administrative law judge ... only for reasons of policy. The agency shall state in writing the reason and legal basis for a change made under this subsection.

*Id.* Legends contends TABC exceeded its statutory authority when it altered the administrative law judge's findings and conclusions because TABC did not state any policy reason for the changes.

We find, however, that TABC stated its policy reason in writing, as section 2001.-058(e) requires.[1] In this case, the policy at issue is the protection of public safety. This policy is set forth in Tex.Alco.Bev.Code Ann. §§ 1.03 & 11.46(a)(8) (Vernon 1978 & Supp. 1994). Section 1.03 provides:

· This code is an exercise of the police power of the state for the protection of the welfare, health, peace, temperance, *and safety*[2] of the people of the state. It shall

---

1. Legends does not complain that TABC failed to state the legal basis for its decision. Accordingly, we do not address whether the language in TABC's order satisfies the legal basis requirement of section 2001.058(e).

2. Unless otherwise noted, all emphasis is supplied by the author.

be liberally construed to accomplish this purpose.

*Id.*

Section 11.46(a) provides:

(a) The commission or administrator may refuse to issue an original or renewal permit with or without a hearing if it has reasonable grounds to believe and finds that any of the following circumstances exists:

. . . .

(8) the place or manner in which the applicant may conduct his business warrants the refusal of a permit based on the general welfare, health, peace, morals, *and safety* of the people and on the public sense of decency[.]

*Id.*

In its order, TABC stated:

[M]ost of the testimony in the case revolved around the *public safety issue* of the club. It is an important issue that there is only one entrance into and one exit out of the parking area of Club Legends. The only exit is directly onto the frontage road as it intersects with the exit ramp of State Highway 360. *A public safety issue is created* by the fact that there is only one exit.

TABC also made the following finding of fact in its order:

38. The sale of alcoholic beverages, coupled with the fact that the only exit from Club Legends is directly onto the frontage road as it merges with the exit ramp, *creates a significant risk to public safety* by permitting the sale and service of alcoholic beverages at Club Legends.

The public safety of Texas citizens is a legitimate public policy basis for TABC's ruling, as evidenced by sections 1.03 and 11.-46(a)(8). The record shows TABC stated this policy reason in writing. We overrule Legends' first point of error.

■ In point two, Legends complains the trial court improperly affirmed TABC's order denying the permits because there is not substantial evidence Legends' location creates a risk different from and more dangerous than other licensed establishments serving alcoholic beverages in the immediate vicinity.

■ In reviewing TABC's ruling, both the trial court and this court are to apply the substantial evidence test. The substantial evidence test is whether the evidence as a whole is such that reasonable minds *could* have reached the conclusion that the agency must have reached in order to justify its action. *Texas Alcoholic Beverage Comm'n v. Sierra,* 784 S.W.2d 359, 360 (Tex.1990) (emphasis added). *See also* TEX.ALCO.BEV.CODE ANN. §§ 11.67(b), 61.34 (Vernon 1978 & Supp. 1994). The issue under this test is not whether the trial court's ruling was correct but whether it was reasonable. *Sierra,* 784 S.W.2d at 361.

■ Although substantial evidence is more than a mere scintilla, the evidence in the record may actually preponderate against the agency's decision and still amount to substantial evidence. *Texas Health Facilities Comm'n v. Charter Medical–Dallas,* 665 S.W.2d 446, 452 (Tex.1984). The agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the complaining party to demonstrate otherwise. *Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health,* 665 S.W.2d at 453.

Legends argues, however, that TABC cannot deny a permit to a fully qualified applicant who proposes to operate a lawful business in a wet area and in compliance with city zoning ordinances, absent some unusual condition or situation that justifies such a refusal. *See Texas Alcoholic Beverage Comm'n v. Mikulenka,* 510 S.W.2d 616, 619 (Tex.Civ.App.—San Antonio 1974, no writ).

The evidence in this case shows: Traffic exits off State Highway 360, via a two-lane exit ramp, onto Watson Road, the service road that runs in front of Legends. *See* Exhibit A attached hereto. Watson Road is a one-way road. It consists of two lanes before the merge area and four lanes after it. The sole exit from the Legends parking lot is a driveway located near the beginning of the

"gore area"[3] between the exit ramp and Watson Road. Although the gore area is intended to separate cars using the exit ramp and the frontage road, photographs introduced into evidence show vehicles frequently cross this area illegally. Thus, cars freely move from the exit ramp across the gore area to Watson road, and vice versa. Legends' patrons are therefore forced to turn right onto Watson Road very near this complex merge area.

Several things make this particular exit ramp and merge area unusual:

1. As we have previously noted, the exit ramp has two lanes. Dr. Joseph D. Blaschke, TABC's expert, estimated that only ten to fifteen percent of the exit ramps in Texas have two lanes.

2. The volume of traffic exiting from Highway 360 onto the exit ramp is extremely high, when compared with other Texas exit ramps. Blaschke estimated the volume on the ramp to be in the upper ten percent in Texas.

3. There is an unusually short distance—600 feet—between where the exit ramp merges with Watson Road and the nearest intersection.

4. A high number of vehicles exiting from State Highway 360 onto Watson Road turn right at the next intersection, which is Six Flags Drive. Based on his personal observations, Blaschke testified that about fifty percent of the vehicles exiting at this point moved to the right or outside lanes of the frontage road. In order to make a right-hand turn onto Six Flags Drive, vehicles exiting onto Watson Road must cross between one and three lanes in the 600 feet between the exit ramp and the intersection. *See* Exhibit A.

5. Vehicles using the exit ramp and Watson Road travel at relatively high speeds. Eighty-five percent of the drivers travel down the exit ramp at fifty-one miles per hour, and eighty-five percent of the vehicles on Watson Road travel at forty-one miles per hour.

Blaschke testified that the merge area does not present a congestion problem. Rather, drivers negotiating that area must engage in a "complex decision-making driving task" because of the high volume of traffic, the high rate of speed, the shortness of the merge area, and the number of drivers making a right-hand turn at Six Flags Drive.

Legends' location is also unique when compared with others in the vicinity, in that Legends' patrons exiting the club premises *must* turn right onto Watson Road near the beginning of the gore area and travel through the 600–foot merge section. It is undisputed that, in this area, Legends is the only establishment serving alcoholic beverages whose patrons are forced to travel through the unusually busy merge zone.

Legends makes much of the fact that the volume of traffic in the merge area was estimated at 8,760,000 cars, and only eight motor vehicle accidents occurred during the year that served as the testing period. Blaschke testified without contradiction, however, that allowing the sale of alcoholic beverages at Legends would increase the risk of an accident to all drivers on this stretch of road. Blaschke opined that, due to the complexity of the driving task at this particular merge area, alcohol-impaired individuals leaving Legends would create a greater potential for accidents than usual. On the other hand, Frank Yu, Legends' traffic engineering expert, testified repeatedly that he did not factor into his conclusions the effect of alcohol on drivers. Rather, Yu's opinions on traffic patterns and driver behavior were premised upon his assumption that all drivers would behave "normally." Yu also assumed all drivers would obey all the traffic laws—including not illegally crossing the gore area—despite unchallenged photographic evidence to the contrary.

We find there is substantial evidence of an unusual situation that justifies TABC's refusal to issue the permits to Legends. *See Sierra,* 784 S.W.2d at 360 (upholding TABC's denial of wine and beer permit because location of proposed establishment, on a dangerous curve, created a potential traffic safety

---

**3.** The gore area is the triangular section between a freeway exit ramp and the service road that is striped with white paint. It is designed to keep cars from moving off the exit ramp too soon, or from moving too quickly from the service road into the exit lanes.

hazard). Legends bore the burden of showing that no substantial evidence existed to support TABC's ruling, and it has failed to carry that burden.

We overrule point of error two.

The trial court's judgment is affirmed.

EXHIBIT A

CITY OF ARLINGTON
DEPARTMENT OF TRANSPORTATION
NORTHBOUND SH360 AT SIX FLAGS DRIVE
TRAFFIC/ACCIDENT ANALYSIS

PLAINTIFF'S EXHIBIT P-3 11-19-92 KB

SIX FLAGS DR./I.H. 30 RAMP

MWZ 11-04-92

| | EAST BOUND | WEST BOUND | TOTAL |
|---|---|---|---|
| FRI | 2,206 | 2,831 | 5,037 |
| SAT | 1,421 | 2,139 | 3,560 |
| SUN | 970 | 1,343 | 2,313 |

22 ACCIDENTS IN 1991

AVE. E

NB 360 FRONTAGE

EXXON

| THU | 24,800 |
| FRI | 23,749 |
| SAT | 24,890 |

N

| | 51.0 MPH |
| THU | 15,098 |
| FRI | 17,213 |
| SAT | 15,994 |

| | 41.4 MPH |
| THU | 9,704 |
| FRI | 12,536 |
| SAT | 8,896 |

gore area

LEGENDS

Legends driveway

VALUE INN

85% SPEED          24 HR. VOLUMES

| XX M.P.H | XXXX |
| THU | XXXX |
| FRI | XXXX |
| SAT | XXXX |

COUNTS TAKEN OCT. 29–NOV. 1, 1992 BEGINNING AT 7:00 A.M.
* COUNTS TAKEN NOV. 5–NOV. 8, 1992 BEGINNING AT 5:00 P.M

MAJESTY DR.

Watson Road →