In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-209 CV


____________________



ANDRES TOLEDO, GENERAL PARTNER,


d/b/a PLAZA DE TOROS LA HERRADURE, Appellant



V.



TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 01-04-02415-CV






O P I N I O N


 Plaza De Toros "La Herradure," a partnership, acting through its general partner,
Andres Toledo, applied for a beer retailer's on-premise license and an on-premise "late
hours" license. The county judge, acting as an administrative law judge for the Texas
Alcoholic Beverage Commission ("TABC"), denied the application. Andres Toledo, doing
business as Plaza De Toros "La Herradure" ("Toledo"), appealed to the district court,
which affirmed the denial. Toledo appeals, bringing three issues.

 When approving or rejecting an application for an alcohol license, a county judge
is acting administratively as part of the review process of the Texas Alcoholic Beverage
Commission ("TABC"). See Lindsay v. Sterling, 690 S.W.2d 560, 562 (Tex. 1985). Both
the district court's and our review of final orders issued by the TABC are governed by the
substantial evidence rule. See Tex. Alco. Bev. Code Ann. §§ 11.67(b), 61.34(a)
(Vernon 1995); Lindsay, 690 S.W.2d at 562. 

 Here, Toledo applied for a beer and liquor license for a rodeo his partnership
operates. Toledo testified his rodeo and dances are conducted on twenty-one acres of land,
which includes approximately five acres for parking. Toledo planned to sell alcohol or
beer only on Sundays. Prior to the hearing, Toledo had conducted the rodeo only three
times. Toledo further testified as to his good character and that of his partners. He also
testified that he had obtained a building permit and a septic permit and that there would be
male and female restrooms at the rodeo. 

 Nine persons testified at the hearing in opposition to Toledo's application.

 In the first issue, Toledo asserts that his procedural, statutory, and due process
rights were violated at the application hearing because the county court admitted hearsay
testimony over his objections and failed to swear witnesses. (1) 

 In his hearsay argument, Toledo complains of the admission into evidence of
seventy one letters of protest. Contending his ability to cross examine these complainants
was being frustrated, Toledo objected to the letters as hearsay. In support of his argument,
Toledo cites this court's decision in Lubbock Radio Paging Serv., Inc. v. Southwestern Bell
Tel. Co., 607 S.W.2d 29, 32 (Tex. Civ. App.--Beaumont 1980, writ ref'd n.r.e.)("The
hearsay rule is applied in the same manner in proceedings before an administrative agency
as in trials before a court.").

 While the TABC acknowledges that the letters were hearsay, the agency asserts
Toledo cannot show the error probably caused the rendition of an improper judgment as
required by Rule 44.1 of the Texas Rules of Appellate Procedure. See Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998)("Moreover, we will not
reverse a trial court for an erroneous evidentiary ruling unless the error probably caused
the rendition of an improper judgment."). As recently reiterated by the Texas Supreme
Court, we review the entire record to determine if the excluded or admitted evidence
probably resulted in the rendition of an improper judgment. See Texas Dep't of Transp.
v. Able, 35 S.W.3d 608, 617 (Tex. 2000). 

 Here, the record shows that several of the letters admitted over Toledo's objectionswere written by persons who also testified. Toledo, thus, had the opportunity to cross-
examine those opponents. As to the remaining protest letters contained in Exhibit One, 
our review finds that all are form letters, except for one letter written by a non-testifying
person. The protestors employed two different form letters. Over fifty used one form, 
while less than a dozen used another. 

 The larger number of protestors using the first form letter complained that "the sale
of alcohol for consumption on premises will adversely affect the neighborhood in which
[we] live." They noted that "[a] bar in the middle of a residential neighborhood is
unconscionable as it threatens the general welfare of the families living in the immediate
area and breaches their peace, morals, and sense of decency." These protestors requested
that the county court consider the welfare of homeowners and families in their "small
neighborhood" and reject the application.

 The protestors using the second form letter complained that approving the licenses
"would have a negative impact on the quality of life in our community. This is a
residential neighborhood with many families. We do not want this kind of establishment
in our area." 

 The sole person who filed a "non-form" letter, but did not testify, wrote that she
and her family moved to their home to get away from the drugs, traffic and alcohol found
in Houston. She feared that alcohol's being sold in her neighborhood would increase the
risk of "drunks running up and down our roads causing chaos and doing property
damage." She also noted that the "road is curvy and there is the possibility of wrecks and
hitting our children as they play, ride bikes or horses."

 Among those testifying was Rose Simmons, who complained of noise and stated,
"It's a very dangerous road." She feared drunks might kill one of her children or
grandchildren or destroy her property. Bo Grimes testified that the excessive number of
cars and the drinking would make it dangerous to travel on Pioneer Lane. Susan Harger
expressed her concern about the curves in the road and the potential danger to the
neighborhood's children, who ride bicycles on the road. She also complained about the
loud noise, and further stated that the applicants were violating their contract of sale.
Tommy Knight testified he was concerned for the children riding bicycles because of the
excessive traffic that would occur. He stated that the residents did not want alcohol in their
neighborhood. Jerry Vincent testified that the children would be in more danger if alcohol
were sold. He stated that the area was a residential neighborhood, and the street was not
a business thoroughfare. He requested that the safety and welfare of the area's families be
put first. Jennifer Grimes reiterated that the residents enjoyed a "family-type"
neighborhood. She expressed concern regarding the effect of increased traffic on the
safety of the children and the residents who walked and jogged along the road. She also
was concerned about drunk drivers, the possible increase in crime, and noise. Others who
testified expressed concerns about the appropriateness of the buildings for the planned
activities.

 Having reviewed the entire record, we find that admission of the letters probably
did not result in the rendition of an improper judgment. See Able, 35 S.W.3d at 617. To
show harm, the evidence must be controlling on a material issue and not cumulative of
other evidence. See Williams Distrib. Co. v. Franklin, 898 S.W.2d 816, 817 (Tex. 1995). 
Because appellant does not explain how the judgment turns on the letters that were
admitted over his objection, Toledo does not satisfy the first prong of a successful
evidentiary challenge. See Able, 35 S.W.3d at 617 (citing City of Brownsville v. Alvarado,
897 S.W.2d at 750, 754-55 (Tex. 1995)). In addition, our review of the record finds the
admitted letters to be cumulative of testimony presented during the hearing. Toledo's
hearsay challenge is overruled.

 Toledo's additional complaint in issue one is that witnesses testified without first
being sworn. However, he does not provide record references demonstrating he preserved
this error, nor does our review of the record find it was preserved. Moreover, Toledo
himself was not sworn before testifying at the hearing on his license application; only his
interpreter was sworn. In addition, Toledo's counsel cross-examined several of the
unsworn witnesses. 

 By not objecting to the county court's failure to administer the oath to witnesses,
Toledo waived any objections he has. See Banda v. Garcia, 955 S.W.2d 270, 272 (Tex.
1997); Tex. R. App. P. 33.1(a)(1)("As a prerequisite to presenting a complaint for
appellate review, the record must show that the complaint was made to the trial court by
a timely request, objection, or motion . . .."). 

 Toledo's unsworn testimony challenge is overruled. Issue one is overruled. 

 In his second and third issues, Toledo contends the county judge made findings, that
are not supported by substantial evidence and are not sufficient to deny the application
under the law.

 Under the substantial evidence rule that sets the standards for our review, the record 
evidence may preponderate against the county judge's decision but still amount to
substantial evidence, so long as it is more than a scintilla. See Bavarian Properties, Inc.
v. Texas Alcoholic Beverage Comm'n, 870 S.W.2d 686, 688 (Tex. App --Fort Worth
1994, writ denied). Further, the county judge's findings, inferences, conclusions, and
decisions are presumed to be supported by substantial evidence, and the burden is on the
complaining party to show that they are not. See Texas State Bd. of Dental Examiners v.
Sizemore, 759 S.W.2d 114, 116 (Tex. 1988). Based on the evidence introduced, we are
to determine whether reasonable minds might have reached the same decision that the
county judge did. Texas Alcoholic Beverage Comm'n v. Sierra, 784 S.W.2d 359, 360
(Tex.1990). In other words, "[t]he true test is not whether the agency reached the correct
conclusion, but whether some reasonable basis exists in the record for the action taken by
the agency." See Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665
S.W.2d 446, 452 (Tex. 1984).

 On February 27, 2001, the county court stated two reasons in denying Toledo's
application: (1) "the place or manner in which the applicant . . . may conduct his business
warrants a refusal based on the general welfare, health, peace, morals, safety, and sense
of decency of the people[,]" (citing section 61.42(a)(3) of the Texas Alcoholic Beverage
Code); and (2) "the applicant . . . does not have an adequate building available at the
address for which the license is sought before conducting any activity authorized by the
license[,]" (citing section 61.43(5) of the Texas Alcoholic Beverage Code).

 On March 14, 2001, the county court denied the rehearing and further stated his 
findings that: 


 the operation of the establishment in the proposed locale would not benefit
the general welfare, health, morals, and safety of the people who reside in
the area;

 the granting of this license would be offensive to the general public's sense
of morals and decency;

 the granting of the license would create an extremely hazardous traffic
condition and expose the residents of the surrounding residential
neighborhood and their children to potentially serious bodily harm and injury
at the hands of inebriated drivers of vehicles ingressing and egressing the
site;

 children on bicycles and pedestrian traffic would be at particular risk, which
is a particular concern as the neighborhood is exclusively residential, with
no other commercial buildings;

 one-acre of primitive parking provided for a nineteen-acre site is not
adequate;

 there is a substantial question as to whether the building itself is safe for
occupancy;

 granting the license application would constitute a health hazard to both the
patrons of such an establishment and to the people who live in the residential
area as well because of inadequate sanitary facilities, which would be needed
for a large rodeo crowd, and the accompanying potential for the transmission
of communicable diseases that can result from inadequate sanitary facilities. 


 Under the Texas Alcoholic Beverage Code, an application for a liquor license shall
be denied if the county judge has reasonable grounds to believe and finds that the place or
manner in which the establishment is to conduct its business warrants denial based on the
general welfare, health, peace, morals, and safety, and sense of decency of the people. 
See Tex. Alco. Bev. Code Ann. § 61.42(a)(3) (Vernon 1995). In reviewing all the
evidence, we find the record provides ample basis for the county judge's findings and its
denial of Toledo's application. Issues two and three are overruled. We affirm the district
court's judgment, which affirmed the Commission's denial of Toledo's application.

 AFFIRMED.

 PER CURIAM


Submitted on November 28, 2001

Opinion Delivered January 10, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Also in his first issue, Toledo maintains that the county judge failed to rule on each
proposed finding of fact Toledo presented as required under section 2001.141(e) of the
Texas Government Code. However, we do not consider this argument as Toledo waived
it by not including it in his motion for rehearing. See Four Stars Food Mart, Inc. v. Texas
Alcoholic Beverage Comm'n, 923 S.W.2d 266, 270 (Tex. App.--Fort Worth 1996, no
writ)("Failure to assert a point of error in a motion for rehearing will result in waiver of
the error.")