TEXAS ALCOHOLIC BEVERAGE
COMMISSION, Appellant,

v.

TWENTY WINGS, LTD. and TWI
XXV, Inc., Judy Hall, Director, as
Partners d/b/a Hooters, Appellees.

No. 2–02–102–CV.

Court of Appeals of Texas,
Fort Worth.

June 26, 2003.

Rehearing Overruled July 31, 2003.

John Cornyn, Texas Attorney General, Howard G. Baldwin Jr., First Assistant Attorney General, Jeffery S. Boyd, Deputy Attorney General for Litigation, Don Walker, Chief, Administrative Law Division, Dewey E. Helmcamp, III, Assistant Attorney General Administrative Law Division, Austin, for Appellant.

Steven H. Swander, Fort Worth, for Appellee.

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

This case concerns an application for a beer retail dealer's on-premise license and a retail dealer's on-premise late hours license with food and beverage certificate ("alcoholic beverage license") by Appellee Twenty Wings Ltd., and TWI XXV, Inc., Judy Hall Director as Partners d/b/a Hooters ("Hooters"). The Texas Alcoholic Beverage Commission ("TABC") appeals the district court's order overruling the Tarrant County judge's administrative ruling denying Hooters' application. TABC contends that the county judge's order was supported by substantial evidence and should have been affirmed. We reverse and render.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Hooters applied for an alcoholic beverage license in conjunction with its decision to build and open a new restaurant at 5821 IH–20 West in Arlington, Texas. In response, Decency for Arlington, a group formed for the purpose of opposing Hooters' application for an alcoholic beverage license, filed a letter of protest with Tarrant County Judge Tom Vandergriff. On October 4, 2001 the county judge sat in his administrative capacity as a hearing officer for the TABC to determine whether Hooters' application should be granted.[1] At the hearing, Hooters presented one witness in support of its application. The protestors presented six witnesses and a variety of Hooters' paraphernalia to demonstrate that the place or manner in which Hooters may conduct its business warranted a refusal of the alcoholic beverage license based on the general welfare, health, peace, morals, safety, and sense of decency of the people. See TEX. ALCO. BEV.CODE ANN. § 61.42(a)(3) (Vernon 1995).

After taking the matter under advisement, the county judge denied Hooters' application by issuing an order that stated,

On October 4, 2001, a hearing was held with regard to the above styled and numbered application. After hearing all

---

1. See TEX. ALCO. BEV.CODE ANN. §§ 61.31, 61.32 (Vernon Supp.2003).

evidence presented and reviewing the application, the court orders the application refused based on Sections 61.42(a)(3) of the Texas Alcoholic Beverage Code, *the place or manner* in which the applicant for a retail dealer's license may conduct their business warrants a refusal of a license based on the general welfare, morals, safety, and sense of decency of the people. [Emphasis supplied.]

Hooters appealed this order under section 11.67 of the alcoholic beverage code to the 48th District Court.[2]

After an initial hearing conducted on December 28, 2001, the trial court, with Judge Bob McCoy presiding, remanded the case to the county judge to amend his order either to conform to the findings of fact and conclusions of law or to amend the findings of fact and conclusions of law to conform to the order. The order on remand further instructed the county judge to provide greater specificity as to finding of fact number two, which concerned the proximity of the proposed licensee's location to schools, churches, and residences. The order allowed the county court to receive additional evidence if necessary.

The county judge complied and subsequently issued amended findings of fact and conclusions of law, as well as an amended order stating the following:

On October 4, 2001, a hearing was held with regard to the above styled and numbered application. After hearing all of the evidence presented and reviewing the application, the court orders the application refused based on Sections 61.42(a)(3) of the Texas Alcoholic Beverage Code. *The place* where the Applicant intends to conduct business *in combination with the manner* in which the applicant for a retail dealer's license may conduct their business warrants a refusal of a license based on the general welfare, morals, safety, and sense of decency of the people. [Emphases supplied.]

Hooters filed a motion for rehearing, which the county judge denied. Hooters then filed its first amended original petition in the 48th District Court.[3] On February 28, 2002, visiting Judge George Crowley conducted a hearing and rendered a final judgment reversing the county judge's order, holding that the order was not supported by substantial evidence.[4]

## III. DISCUSSION

In one issue, the TABC argues in its appeal that the district court erred as a matter of law in holding that the county judge's administrative ruling denying Hooters' application was not supported by substantial evidence.[5] Rather, the TABC

2. Section 11.67(a) of the alcoholic beverage code provides as follows:

An appeal from an order of the commission or administrator refusing, cancelling, or suspending a permit or license may be taken to the district court of the county in which the applicant, licensee, or permittee resides or in which the owner of involved real or personal property resides.

TEX. ALCO. BEV.CODE ANN. § 11.67(a) (Vernon 1995).

3. Hooters filed its original petition to review the order denying alcoholic beverage license (Cause No. 236–191481–02) and then moved to consolidate the case with Cause No. 48–

190671–01, which was the pending case before the 48th District Court. The two cases were consolidated on February 19, 2002.

4. On March 4, 2002, Judge McCoy granted a new trial on the court's own motion; however, three days later, Judge Crowley granted Hooters' motion to vacate Judge McCoy's order. Neither side seeks our review concerning these orders; thus, we confine our opinion to the TABC's evidentiary issue.

5. *See Live Oak Resort, Inc. v. Tex. Alcoholic Beverage Com'n,* 920 S.W.2d 795, 798 (Tex. App.-Houston [1st Dist.] 1996, no writ) (hold-

contends that substantial evidence supported the county judge's conclusion that a special circumstance existed warranting a denial of Hooters' application. Hooters responds that the district court properly found that no substantial evidence justified the denial of an alcoholic beverage license as ordered by the county judge. We agree with the TABC.

## A. Governing Statute

██ As one of the mandatory grounds for refusal of an alcoholic beverages permit or license, the alcoholic beverage code lists the following:

> The county judge shall refuse to approve an application for a license as a distributor or retailer if he has reasonable grounds to believe and finds that ... the place or manner in which the applicant for a retail dealer's license may conduct his business warrants a refusal of a license based on the general welfare, health, peace, morals, safety, and sense of decency of the people.

TEX. ALCO. BEV.CODE ANN. § 61.42(a)(3). Additionally, "in order to deny a permit to a fully qualified applicant who proposes to operate a lawful business in a wet area and in compliance with the zoning ordinances of the city, some unusual condition or situation must be shown so as to justify a finding that the place or manner in which the applicant may conduct his business warrants a refusal of a permit." *Tex. Alcoholic Beverage Comm'n v. Mikulenka,* 510 S.W.2d 616, 619 (Tex.Civ.App.-San Antonio 1974, no writ) (footnote omitted); *see Bavarian Props., Inc. v. Tex. Alcoholic Beverage Comm'n,* 870 S.W.2d 686, 689–90 (Tex.App.-Fort Worth 1994, writ denied).

## B. Standard of Review

██ We must examine whether there was substantial evidence to support the county judge's refusal of Hooters' application with respect to the standard set forth in section 61.42(a)(3) of the alcoholic beverage code. *See* TEX. ALCO. BEV.CODE ANN. § 61.42(a)(3). A recent case from the Austin Court of Appeals succinctly sets forth how we are to conduct this review:

> In reviewing an application for a beer and wine license or permit, the county judge acts in an administrative rather than a judicial capacity. *Lindsay v. Sterling,* 690 S.W.2d 560, 562 (Tex.1985). The Code does not define how the place or manner in which a business will be operated jeopardizes the general welfare, health, peace, morals, or sense of decency of the people. *Brantley v. Tex. Alcoholic Beverage Comm'n,* 1 S.W.3d 343, 347 (Tex.App.-Texarkana 1999, no pet.). The Legislature has given the county judge great discretion in this determination. *Four Stars Food Mart, Inc. v. Tex. Alcoholic Beverage Comm'n,* 923 S.W.2d 266, 272 (Tex.App.-Fort Worth 1996, no writ).

> In this context, county court proceedings are subject to the procedural provisions of the Administrative Procedure Act. *Brantley,* 1 S.W.3d at 343. We review administrative decisions under the substantial evidence test. TEX. ALCO. BEV.CODE ANN. §§ 11.67(b), 61.34. The appropriate test is whether the evidence as a whole is such that reasonable minds could have reached the same conclusion that the county court reached to justify its decision. *Tex. Alcoholic Beverage Comm'n v. Sierra,* 784 S.W.2d 359, 360 (Tex.1990). Substantial evidence need only be more than a scintilla; in fact, the evidence may greatly preponderate

ing that, while any person may protest granting of alcohol license, TABC is only proper

party to suit seeking review of administrative decision).

against the decision and still amount to substantial evidence in favor of the decision. *Tex. Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984). We do not consider whether the county judge's ruling was correct, but only whether some reasonable basis exists in the record for the ruling. *Sierra*, 784 S.W.2d at 361. *Tex. Alcoholic Beverage Comm'n v. Sanchez*, 96 S.W.3d 483, 489 (Tex.App.-Austin 2002, no pet.).

## C. Evidence Presented at the Administrative Hearing

During the administrative hearing, Hooters presented only the testimony of John Crowder. Crowder, apparently one of the owners of the proposed Hooters, testified that Hooters is a nationally franchised food and beverage chain with about three hundred restaurants nationwide. He testified that there were three existing Hooters in Tarrant County, the first of which opened in 1989. Crowder testified that another had been operating in north Arlington, Texas since 1990, and according to Crowder, the north Arlington Hooters was located around two miles from Lamar High School. Crowder further testified that the proposed south Arlington Hooters would be operated in the same manner as the other Hooters restaurants. For example, all of the servers and sellers of alcohol would be TABC trained and state certified.

Crowder testified that the proposed site was in a commercial shopping center, which had been zoned for the sale of alcoholic beverages. Crowder estimated that there were fifty businesses in the shopping center, and ten to twelve of them had some form of an alcoholic beverage license. Crowder further testified that unlike restaurants such as Chili's, Bennigan's, or Steak and Ale, none of the Hooters restaurants have a bar, so they do not sell hard liquor. Companywide, Hooters' sales averaged about twenty-five percent alcohol and seventy-five percent food.

The protestors presented the testimony of Jeffrey Clark, Dr. Wade Hemminger, William Zedler, Ron Wright, and Dr. Russell Barksdale.[6] During the administrative proceedings, two Hooters' calendars, a deck of playing cards, a cup, a magazine, a key chain, a computer screen saver, a yellow pages ad, a Hooters newspaper, a map of the proposed location, and the City of Arlington mission statement were also introduced in evidence.

Jeffrey Clark, a licensed psychotherapist and Arlington resident, testified that he is a registered sex offender treatment provider and regularly treats probationary and paroled sex offenders as part of his practice. Clark testified that he had been to a Hooters before to take note of "what types of people frequent there, what the waitresses wear, how the waitresses respond to their patrons and the general layout of the restaurant." Clark observed that all of the servers at Hooters wear orange shorts, which are "short enough to expose the lower portion of their rear end." He also observed that all of the servers wore "extremely tight" tank tops "that are cut off at the waist to accentuate their cleavage." In describing his experience at Hooters and comparing the demeanor of the Hooters' servers to those from more traditional restaurants, Clark testified that the Hooters waitresses "seemed extremely flirtatious, close in nature in terms of space," and he stated that there was "[a] lot of bending over."

---

6. Leslie Recine also testified concerning petitions collected in response to Hooters' application for an alcoholic beverage license. Those petitions were not admitted into evidence, and that ruling is not challenged on appeal.

With respect to the name of the restaurant chain itself, Clark testified that he felt the name Hooters was "a derogatory term of women's breasts." Clark pointed out that the company logo is an owl behind the two Os in the word Hooters, which is purportedly done to foster debate over the actual meaning behind the chain's name. While reading from a Hooters' media statement, Clark quoted, "[T]he element of female sex appeal is prevalent in the restaurants," and the servers at Hooters "have the same right to use their natural female sex appeal to earn a living" as do supermodels.

Clark testified that Hooters does not market itself to families. Clark also testified that because of the "sexually explicit nature of [Hooters'] business, ... their name, ... the uniforms that they wear, ... [and] the merchandise they [sell]," Clark stated his belief that Hooters was selling sexual fantasy. Clark further testified that people who are on probation or parole for sex offenses are not allowed to possess sexually explicit merchandise or to frequent places that may trigger sexual fantasy. Thus, according to Clark, Hooters is the type of business that sex offenders would not be allowed to visit.

Clark also voiced his concern that there were two high schools, Martin High School, which he believed to be the largest in the state, and Kennedale High School, within two miles of the proposed south Arlington Hooters. Clark testified that because of the proximity to high schools and the fact that many students leave campus during lunch, "some of those kids are probably going to come [inside Hooters]." In his opinion, "[t]he danger ... is that we're just adding to a tremendous amount of sexual messages that our children are getting," and Hooters would create "an undue exposure in our neighborhood." Further, Clark testified that the proposed south Arlington Hooters would create a safety issue, stating:

> Of course, I have no evidence, it's not there. We don't know what having Hooters close to two high schools, how that's going to affect the crime rate for that particular section of Arlington. But from my experience with other offenders who go into those places, I mean, we have sexual assaults outside of restaurants who serve alcohol, who have sexually explicit materials, topless dancers there are all kinds of sexual offenses that occur in, around and near those establishments. So I would—my opinion is that it's an undue danger we don't need to try to figure out if it's dangerous or not.

On cross-examination, however, Clark testified that he had no knowledge of any increase in the crime rate surrounding the existing north Arlington Hooters, and he agreed that whether or not Hooters served alcohol, the potential problems with sex offenders could still occur. Clark agreed that his complaint was with the location of the Hooters in south Arlington and not with the fact that it wanted to sell alcoholic beverages. On redirect, however, Clark testified that the use of alcohol decreases a person's ability to restrain himself in acting out sexual fantasies.

Dr. Wade Hemminger, who is an Arlington resident, a licensed, psychotherapist with twenty-five years of experience, and a university professor, also testified for the protestors. In his private practice, Dr. Hemminger deals mostly with people with sexual and alcohol addiction problems. Similar to Clark, Dr. Hemminger had worked with many patients who had sexual disorders and a high percentage who were sexual addicts. Dr. Hemminger testified that his problem with the proposed Hooters restaurant "is focused on the use of alcohol and the problems it produces."

Dr. Hemminger "agree[d] with ... Clark that inviting alcohol or any mood alternate [sic] substance makes it even more difficult to control other types of compulsive behaviors like sexual disorders." Dr. Hemminger testified that while there are some businesses on the frontage road to IH–20 at the proposed location for the south Arlington Hooters, the area is primarily residential with churches and schools nearby.[7] Dr. Hemminger expressed his opinion that "the mix of alcohol, ... [the] presentation with all the materials that are being sold and the presentation of this restaurant makes things very, very threatening." His concern was "not only with the people who have a problem," but also "with the younger people that might be affected by locating the restaurant" at this particular location.

William Zedler, who was a twenty-two year Arlington resident and chairman of Decency for Arlington, testified that the area of the proposed Hooters was a "large residential area surrounding a neighborhood shopping center," which included businesses such as a grocery store, drug store, music store, cleaners, model or craft store specializing in remote control toys, and other restaurants. When asked to describe and compare some of the other restaurants in the shopping center, Zedler listed Tai Pan Chinese, Ole' Mexican, Taco Bueno, Colter's, and Khaki's and stated that all employ both male and female servers who dress in casual daily attire. Zedler also agreed on cross-examination that the area is zoned for the sale of alcoholic beverages and that Colter's, Harrigan's, Cheddar's, The Old Mexican Grill, Steak and Ale, Mac's Bar and Grill, The Seafood Cracker, and Mulligan's bar—all of which are located in the same shopping center as the proposed Hooters—sell alcoholic beverages.

Zedler, who had also dined at a Hooters restaurant on two previous occasions, testified that the servers' "outfits were skimpy," and that "it was obvious that ... the thing that was the attractiveness of the facility was the sex appeal of the Hooters girls."[8] Zedler testified that people go to Hooters because of the sex appeal and further testified that "[t]he next step of logic would say, would sexual deviance [sic] and predators be attracted to the same thing?" Zedler then stated his safety concern that allowing the proposed Hooters restaurant at that location would be akin to "putting a magnet in a residential area where you have small children and unescorted women," which would be "mix[ed] ... with alcohol." Zedler testified, "I think that's the major issue is you're mixing this very salacious sexual atmosphere with alcohol and you're putting it in a residential neighborhood." Zedler later stated his concern that granting the alcoholic beverage license to the proposed Hooters would "have a very destructive nature on the neighborhoods around Arlington," could "start[ ] a slide for that area," and would be "very dangerous."

Ron Wright, who lived within walking distance from the proposed Hooters site and is an at-large member on the Arlington City Council, also testified against the granting of the alcoholic beverage license. Wright testified that the area in which Hooters proposed locating its new restaurant was "a family part of town." He

7. On cross-examination, Dr. Hemminger agreed that there are many commercial activities in the location around the proposed Hooters and that the site is in one of the major commercial areas in the City of Arlington.

8. Zedler also stated, "They really did push the alcohol," and his opinion was that the food "was just average quite frankly."

stated that within a two-mile radius, there are two high schools and at least a dozen churches. Wright testified that the City of Arlington's mission statement reflects the values adopted by the City Council and that the city was committed to "providing an exemplary environment in which to live, work, and play" and an environment that was peaceful, moral, and decent.

While Wright testified on cross-examination that he was not authorized to speak on behalf of the entire Arlington City Council, he agreed that Arlington zoning ordinances specifically permitted the sale of alcoholic beverages in the area in which Hooters wanted to build its new restaurant. Wright also testified that Arlington had passed ordinances concerning sexually oriented businesses but that there were no zoning restrictions regarding "sexually suggestive businesses," such as Hooters.

On direct, however, Wright asked the court to deny Hooters' application because of his concerns that "mixing ... alcohol with the sexual stimulation that this restaurant markets," is a "volatile mix." Wright testified,

> In the end, it's the people of the community, not their government that determine what a common community sense of decency is and based on the response that I've received as a councilman in letters, e-mails and phone calls, I would say that this would very definitely violate the community sense of decency that's been adopted in southwest Arlington.

Wright conceded that the existing north Arlington Hooters is within 1.9 miles of a school and that there are a number of apartment residences in that area, and he also conceded that he was not aware of anything indicating that the location of the north Arlington Hooters had dramatically or negatively impacted the morals or decency of life in the north Arlington area.

Wright, however, distinguished the area where the north Arlington Hooters was located by stating that the area was "not a family part of town" because it is on the edge of the festival district, down the street from the Ballpark in Arlington and Six Flags Over Texas theme park.

Dr. Russell Barksdale, who is a pastor and a seven-year Arlington resident, also testified against Hooters' application for an alcoholic beverages license. Dr. Barksdale, who stated that he was testifying as a parent, a pastor, and a citizen, opined that sexual addiction was "the fastest growing addiction in our society," and it was being "exacerbated by alcohol." Dr. Barksdale testified, "The problem I see with the Hooters in southwest Arlington in addition to it being a blithe [sic] on our community is that it preys on the weaknesses of men struggling in that area." After stating that he had served on the long-range planning board for Arlington and on parent and teacher organizations through the schools, Dr. Barksdale testified that "the values that we strive to implement in [our] community are diametrically opposed to the values that the Hooters organization propounds."

Based on the evidence during the hearing, the county judge made the following findings of fact and conclusions of law, which he later amended to provide greater specificity:

### FINDINGS OF FACT

. . . .

6. Located within a one and one-half to two mile radius of the proposed Hooters are twelve churches, and two high schools (Arlington Martin and Kennedale).

7. The shopping center is in a highly residential area with little other commercial development.

. . . .

10. The "new" Hooters will be operated in the same manner as the other Hooters.

11. Hooters waitresses wear "standard attire consisting of [a] low cut "tank top" which accentuates cleavage, very short, tight orange shorts which can and do reveal the lower portion of the buttocks.

12. Hooters waitresses are, or can be, flirtatious with customers and it is part of the Hooter method or manner of doing business for the waitresses to use their sex appeal or allure to generate sales of alcohol, food and merchandise.

13. Hooters markets, both via its website and/or in the restaurant, numerous merchandise items bearing pictures of Hooters girls wearing swim wear in sexually alluring, stimulating or provocative poses. Such merchandise includes but is not limited to cups, playing cards, calendars, newsletters, magazines and computer screen saver disks.

14. Hooters advertises an opportunity for the public to "win" a date with a Hooters girl.

15. Hooters is not marketed as a family restaurant and earns about 70% of its revenue from males ages 25–54.

16. Hooters averages about 75% of its revenue from food sales and 25% from alcohol sales.

17. Persons on parole or probation as sex offenders are generally not to visit or frequent sexually oriented businesses nor posses sexually alluring, stimulating or provocative material.

18. Hooters restaurants and merchandise are the kind of places and materials sexual offenders should not visit or possess, but are of the type of places or material to which such offenders are drawn.

19. High school students may leave their campuses at lunch and could go to the Hooters without parental knowledge or consent.

20. The safety of young females who work at or frequent the shopping center could be jeopardized due to the sexual allure a Hooters poses to sexual offenders.

21. The local community sense of decency is contrary to the business method or manner of operation at the proposed location.

22. The existing restaurants or licensed to sell alcohol establishments in the immediate (1000 feet) vicinity are generally either family oriented or do not employ exclusively scantily clad young female waitresses.

23. There is a difference between Hooters manner of operation and other TABC licensed establishments in the same location. That difference is the widespread, pervasive and management condoned policy of using sex appeal to target a specific segment of the population to sell alcohol, food and merchandise.

24. This difference is an unusual circumstance.

25. The place of the proposed Hooters in a heavily residential area coupled with its sexually alluring suggestive or provocative manner of doing business does not comport with the local sense of decency or morals.

**CONCLUSIONS OF LAW**

. . . .

3. Based upon Finding of Fact Numbers 10 to 18, the court has reasonable grounds to believe and has found that Hooters operates its business in a manner that emphasizes sexual allure, stimulation or provocation in the sale of alcohol, food and merchandise.

4. Based upon Finding of Fact Numbers 6, 7, 10 to 25, the court has reasonable grounds to believe and has found that the local community sense of decency is contrary to Hooters business method or manner.

5. Based upon Finding of Fact Numbers 19 to 20, the court has reasonable grounds to believe and has found that Hooters would pose a danger to the safety and welfare of local community youth, especially females.

6. Based upon Finding of Fact Numbers 22 to 24, the court has reasonable grounds to believe and has found that an unusual circumstance exists that makes Hooters at the proposed location different from other licensed restaurants at that location.

7. Based upon Conclusions of Law 3, 4, 5, and 6, the place coupled with the manner in which the Applicant may conduct his business warrants a refusal of the license based upon the general welfare, morals, safety and sense of decency of the people.

## D. Application of the Law to the Facts

■ Hooters contends that the district court properly overruled the county judge because no substantial evidence justified the denial of Hooters' application for an alcoholic beverage license. Hooters contends that there was no unusual circumstance presented to justify the denial of the license given the fact that Hooters is otherwise qualified to sell alcoholic beverages and intends to do so in a proper location at which other businesses sell alcoholic beverages. Further, after acknowledging that no exact test exists for a county judge to find an unusual condition sufficient to justify the denial of an alcoholic beverages license, Hooters asserts that the protestors have not proven that such a condition exists at the site of the proposed south Arlington location. We disagree.

While we acknowledge that the fact that a large number of an area's residents protest the issuance of a permit is not of itself sufficient reason to deny an application, in the case at bar, independent reasons existed to form the basis for the county judge's denial of Hooters' application. *See Mikulenka*, 510 S.W.2d at 619 (holding that, in spite of a large number of protestors, there was no substantial evidence of an unusual condition or situation in the record to justify denial of an alcoholic beverage license). The facts of the case before us are more similar to *Brantley*, in which the court of appeals upheld the county judge's denial of a beer retailer's on-premise and late hours license. 1 S.W.3d at 347–48.

In *Brantley*, the court held that the county judge's decision was reasonably supported by substantial evidence, which revealed that the proposed area of the club was in a noncommercial, residential area across the street from the homes of eight families with several nearby schools. *Id.* at 345. Additionally, the application was protested by concerned citizens, school officials, and a county commissioner, who argued that the club would affect the quality of life and the safety of children and adults in the area. *Id.*

In the case at bar, while the testimony indicates that the proposed south Arling-

ton Hooters would be in a shopping center, the county judge found that the location is in a highly residential area with little other commercial development. Further, the county judge focused on the sexually-themed nature of Hooters' business and on its proposed location in south Arlington, and in its amended findings of fact and conclusions of law, the county judge gave the following justification for his refusal of Hooters' application:

The clear, credible and convincing evidence presented by Protestant's witnesses in this case establishes beyond doubt that what is unique or unusual about this case is the proposed location (in a general residential area) coupled with the manner of operation (sexually alluring or stimulating). While there are no statutory distance disqualifiers in this case, such as within 1,000 feet of a church, the location is clearly within a well defined residential community with churches and schools no more than one and one-half to two miles away. Since there are other permitted restaurants in the same shopping center as the proposed Hooters, there must be an unusual circumstance warranting denial of the application.

This is the classic example of an appropriate unusual circumstance warranting denial: Hooters' entire business methodology is predicated upon scantily clad, attractive young women using their sex appeal to attract the targeted clientele of young males to buy food, drink and sexually alluring or stimulating merchandise.

This fact standing alone in a non-residential location, might not be sufficient to warrant denial of the application. But, taken together the place of operation coupled with the manner of operation clearly warrants refusal of the license based upon the morals, safety and sense of decency of the people of this community.

All the witnesses testifying for the Protestant establish that the combination of alcohol and a sexually alluring or stimulating business such as Hooters is different from any other family restaurant in the immediate area.

These witnesses also testified about the danger to the safety of young people that could result given the propensity for sexual predators or offenders to seek out the sexually alluring or stimulating. Finally, the testimony established beyond doubt that a Hooters restaurant at this location would violate and be detrimental to the sense of decency of the people of this community.

■ Without citing any authority, Hooters argues that the county judge was not authorized to intermingle the "place" and "manner" licensing criteria in section 61.42(a)(3). *See* TEX. ALCO. BEV.CODE ANN. § 61.42(a)(3). While we acknowledge that we have found no case in which a county judge has based a refusal of an alcoholic beverage license on both the "place" and "manner" criteria, we again reiterate that section 61.42(a)(3) vests a county judge with great discretion to determine whether the place or manner in which a business is operated jeopardizes the general welfare, health, peace, morals, or sense of decency of the people. *Id.; see Brantley,* 1 S.W.3d at 347; *Four Stars Food Mart, Inc.,* 923 S.W.2d at 272. Even if the district court found that evidence greatly preponderated against the decision to deny Hooters' alcoholic beverages license, so long as more than a scintilla of evidence existed in favor of its denial, the decision of the county judge must stand. *See Sierra,* 784 S.W.2d at 361; *Tex. Health Facilities Comm'n,* 665 S.W.2d at 452.

We have reviewed the record of the administrative proceedings before the

county judge. While we do not consider whether the county judge's ruling was correct, on the basis of the record before us, we hold that it was reasonable for the county judge to refuse the application under section 61.42(a)(3). *See* TEX. ALCO. BEV. CODE ANN. § 61.42(a)(3); *Sierra,* 784 S.W.2d at 361; *Sanchez,* 96 S.W.3d at 489; *see also Auto Convoy Co. v. R.R. Comm'n of Tex.,* 507 S.W.2d 718, 722 (Tex.1974) ("Where there is substantial evidence which would support either affirmative or negative findings, the order will be upheld, even though the [agency] might have arrived at a decision contrary to that which the court might have reached."). Because the county judge was exercising his administrative discretion under the alcoholic beverage code and there was substantial evidence to support his decision, we conclude that the district court erred in overruling his determination and in substituting its own judgment for that of the county judge. *See Sierra,* 784 S.W.2d at 361; *Sanchez,* 96 S.W.3d at 489. Accordingly, we sustain the TABC's sole issue.

## IV. CONCLUSION

Having sustained the TABC's sole issue, we reverse the order of the district court, and we render judgment that the order of the county judge denying Hooters' application for an alcoholic beverage license is reinstated. *See Sanchez,* 96 S.W.3d at 490.