In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00088-CV

                                                ______________________________

 

 

             TEXAS ALCOHOLIC BEVERAGE COMMISSION,
Appellant

 

                                                                V.

 

               DONACIANO A. GALINDO, D/B/A BILLARES PUEBLA,

DALLAS COUNTY, TEXAS,
Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 116th
Judicial District Court

                                                             Dallas County, Texas

                                                          Trial Court
No. 10-03397

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Donaciano
A. Galindo, d/b/a Billares Puebla (Galindo) filed an application with the Texas
Alcoholic Beverage Commission (TABC) for a mixed beverage permit, mixed
beverage late hours permit, and a beverage cartage permit.[1]  An administrative law judge employed by the
State Office of Administrative Hearings conducted an administrative hearing in
which protestants TABC, Dallas Independent School District, and Cesar Chavez
Learning Center intervened.[2]
 After the hearing, the administrative
law judge recommended that Galindo’s application be denied on the ground that
the place or manner of the business warranted a refusal of the license based on
the general welfare, health, peace, morals, safety, and sense of decency of the
people.  The TABC adopted the
administrative law judge’s proposal, and Galindo sought review of the decision
with the district court.  Concluding that
the administrative law judge’s order was not based on substantial evidence, the
district court reversed the denial of Galindo’s application.[3]  The TABC appeals the district court’s
judgment on the ground that it erred in substituting its opinion for that of
the administrative law judge, whose order was based on substantial
evidence.  We agree with the TABC,
reverse the district court’s order, and render judgment that the administrative
order be reinstated.  

I.          Standard
of Review

            The duty of the district court, as
well as the appellate court, is to determine from all the evidence presented
whether, as a matter of law, the administrative decision was supported by
substantial evidence.  Tex. Alco. Bev. Code Ann. § 11.67(b); Tex. Gov’t Code Ann. § 2001.174
(Vernon 2008); Helms v. Tex. Alcoholic
Beverage Comm’n, 700 S.W.2d 607, 610 (Tex. App.––Corpus Christi 1985, no
writ)).  “Substantial evidence need only
be more than a scintilla; in fact, the evidence may greatly preponderate
against the decision and still amount to substantial evidence in favor of the
decision.”  Brantley v. Tex. Alcoholic Beverage Comm’n, 1 S.W.3d 343, 347
(Tex. App.––Texarkana 1999, no pet.) (citing Tex. Health Facilities Comm’n v. Charter Med.-Dallas, Inc., 665
S.W.2d 446, 452 (Tex. 1984)).  District
courts and appellate courts are not to substitute their discretion for that of
the administrative tribunal, but rather are required to sustain the administrative
tribunal if its action is reasonably supported by substantial evidence
presented to the trial court.  Helms, 700 S.W.2d at 610.  “The appropriate test is whether the evidence
as a whole is such that reasonable minds could have reached the same conclusion
that the [presiding judge] reached to justify his decision.”  Brantley,
1 S.W.3d at 347; (citing Tex. Alcoholic
Beverage Comm’n v. Sierra, 784 S.W.2d 359, 360 (Tex. 1990)).  Thus, if some reasonable basis exists in the
record for the ruling made by the administrative law judge, we will affirm the
judgment.  Id. at 347–48. 

 

 

II.        Section 11.46 of the
Texas Alcoholic Beverage Code

            The
Texas Alcoholic Beverage Code states that the “commission or administrator may
refuse to issue an original or renewal permit with or without a hearing if it
has reasonable grounds to believe and finds that . . . the place or manner in
which the applicant may conduct his business warrants the refusal of a permit
based on the general welfare, health, peace, morals, and safety of the people
and on the public sense of decency.”  Tex. Alco. Bev. Code Ann. § 11.46(a)(8)
(Vernon 2007).  Because the Code does not
define how the place or manner in which a business might be operated would
jeopardize the general welfare, health, peace, morals, or sense of decency of
the people, the Texas Legislature has given the courts great discretion in this
determination.  Brantley, 1 S.W.3d at 347 (citing Four Stars Food Mart, Inc. v. Tex. Alcoholic Beverage Comm’n, 923
S.W.2d 266, 272 (Tex. App.––Fort Worth 1996, no writ)).  The courts have established that the location
and surroundings of a proposed business can be proper grounds for refusal of a
license based on the general welfare.  Id. (citing Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198 (1949); Helms, 700 S.W.2d at 611. 

III.       Substantial Evidence
Supported the Administrative Law Judge’s Decision 

            The administrative
law judge heard evidence of the current condition of the proposed location, and
past conditions when prior owners had been granted licenses to sell
alcohol.  Galindo purchased the proposed
location, previously Ritano Urbano bar, in hopes that he could renovate it and
reopen as a pool hall.  

            Dawn
Baxter, Code Officer for the City of Dallas, and principal Jose Munoz testified
that the proposed location was 160 feet from the Cesar Chavez Learning Center,
a pre-kindergarten through fifth grade elementary school serving 650
students.  Pictures taken by Baxter demonstrated
that the school was directly across the street, in clear view of the proposed
location, and that there would be no barrier separating the front entrance of
the pool hall from the entrance of the school. 
Baxter testified that the proposed location violated building codes
because “[t]he awning is in disrepair, there’s some [exposed] wiring, and . . .
there are holes in the [roof] tiles which still allows [sic] the water and the
elements to go in and cause deterioration of the building.”  The rear parking lot of the proposed location
abuts the school parking lot and is separated by a chain-link fence.  Due to this arrangement, Baxter explained
that litter from the proposed location crossed the fence line and gathered in
the school parking lot, which is used for emergency fire drills.  Baxter testified that day laborers would
gather on the parking lot of the proposed location in hopes of gaining
employment.  

            Munoz
testified there were residences in the area and a middle school within a
half-mile of the proposed location. 
Because more than fifty percent of the students attending the Cesar
Chavez Learning Center walked to and from school, Munoz was concerned about the
safety and well being of his students, considering the past history of broken
glass, beer bottles, and trash that came from the proposed location.  He mentioned the variety of after-school
activities––tutoring, sports events, parent-teacher conferences, and PTA
meetings that lasted into the night. 
Munoz testified there was a fight among patrons of Ritano Urbano’s bar,
which ended up on school property. 
Considering the possibility of inebriated patrons at the proposed pool
hall, he testified that students could be at risk if not supervised.  PTA president Warran Westmoreland added that
parents felt the day laborers who gathered in the parking lot were a danger to
the children, and he feared the “possibility . . . of a child being accosted by
a customer of a business . . . whose sole business is to sell alcohol, and the
affect that alcohol has on people, then a child might very well be accosted by
someone under the influence of alcohol.” 


            Christina
Casas was a resident of the neighborhood three blocks away from the Cesar
Chavez Learning Center.  She complained
of the day laborers and homeless people who gathered on the proposed property,
as well as the amount of trash on the location. 
Casas claimed that she had been harassed by men there and had witnessed
what she believed were drug deals and prostitution at the location in the past.  She had seen drunk drivers coming from the location
when it was Ritano Urbano and stated parents would not want to expose their
young children to that type of environment. 


            Last,
Galindo testified that the pool hall was not yet open for business, he was
upgrading the interior to meet building codes, planned to police for trash, and
wanted to be a neighbor to the school. 
As an example, he testified he had contacted police to remove loiterers
from the property, and confirmed that no one had gotten in touch with him to
address other complaints.  Galindo owned
another pool hall at a different location. 
There were three alleged violations at this location, resulting in two
written warnings.  He was also associated
with another bar in a period of time where it had twelve alleged violations,
four written warnings, and one dismissed violation.  Galindo explained to the administrative law judge
that only seven of the warnings resulted in a fine.  Galindo’s history of violations included sale
of an alcoholic beverage to an intoxicated person, permitting consumption
during prohibited hours, and permitting a minor to possess alcohol. 

            After hearing the
evidence, the administrative law judge made the proposed findings of fact that:
 “[t]he club is directly across the
street from a school,” “[t]here have been various problems with clubs at the
location in the past, including broken bottles on the school’s parking lot,” “[t]he
property is now in disrepair,” “[d]ay laborers and vagrants frequent the
property,” and “[m]any school activities take place in the evening.”  Noting that “[c]hildren walk to and from the
school,” the judge believed that “[t]he issuance of the permits would create a
danger to the children attending the school.” 
Based on these findings, the administrative law judge concluded “a
preponderance of the evidence shows that issuance of the requested permits will
adversely affect the safety of the public, the general welfare, peace, or
morals of the people, and violate the public sense of decency, as prohibited by”
Section 11.46(a)(8) of the Texas Alcoholic Beverage Code. 

            Considering the
entire record and all the evidence, we cannot say that reasonable minds could
not have reached the same conclusion that the administrative law judge reached
in denying Galindo his permit.  Because
we find that substantial evidence supported the administrative law judge’s
decision, we conclude that the district court erred in overruling the
administrative determination.  See Tex. Alcoholic Beverage Comm’n v. Twenty
Wings, Ltd., 112 S.W.3d 647, 657 (Tex. App.––Fort Worth 2003, pet. denied)
(approving denial of license for the reason, among several others, that
establishment was opening within two-mile radius of two high schools); Brantley, 1 S.W.3d at 347 (affirming
denial of license where “proposed club would be located in a residential area,”
several schools were located nearby, “the safety and quality of life of
children and adults may be affected, and that there is no other commercial
business within 1.2 miles of the proposed location”).  We sustain the TABC’s sole point of
error.  See Tex. Alcoholic Beverage Comm’n v. Sanchez, 96 S.W.3d 483, 489–90
(Tex. App.––Austin 2002, no pet.).  

IV.       Conclusion 

            We reverse the
order of the district court.  We render
judgment that the administrative order denying Galindo’s mixed beverage permit,
mixed beverage late hours permit, and beverage cartage permit applications be
reinstated.  Twenty Wings, 112 S.W.3d at 658; Sanchez, 96 S.W.3d at 490.

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          October
5, 2010

Date Decided:             October
28, 2010











[1]Originally
appealed to the Fifth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court. See Tex.
Gov't Code Ann. § 73.001 (Vernon 2005).  We are unaware of any conflict between
precedent of the Fifth Court of Appeals and that of this Court on any relevant
issue.  See Tex. R. App. P. 41.3.

 





[2]See Tex.
Gov’t Code Ann. § 2003.001 (Vernon 2008). 

 





[3]See
Tex. Alco. Bev. Code Ann. §
11.67 (Vernon 2007).